**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AVENAL POWER CENTER, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 10-cv-00383 (RJL)** |
| | **(Hon. Richard J. Leon)** |
| **U.S. ENVIRONMENTAL PROTECTION AGENCY,** *et al.*, | |
| **Defendants.** | |

**PLAINTIFF AVENAL POWER CENTER, LLC'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)**
**AND REQUEST FOR EXPEDITED DECISION**

Pursuant to Federal Rule of Civil Procedure 12(c), Plaintiff Avenal Power Center, LLC ("Avenal" or the "Company"), by and through its attorneys, files this Motion for Judgment on the Pleadings and Request for Expedited Decision and states:

The Complaint Avenal filed against the U.S. Environmental Protection Agency ("EPA" or "the Agency") and Lisa P. Jackson, Administrator of the U.S. Environmental Protection Agency (the "Administrator") (collectively, "Defendants" or "EPA"), prevails as a matter of law because (1) Defendants violated a statutory deadline imposed by Congress in the Clean Air Act ("CAA" or "the Act"), and (2) Defendants' violation of that deadline was unreasonable.

Avenal filed a CAA permit application that EPA found to be complete as of March 19, 2008. Therefore, under Section 165(c) of the Act, EPA was required to take final action on Plaintiff's permit application within one year—by no later than March 19, 2009. *See* 42 U.S.C. § 7475(c) (2006). Defendants have failed to perform this statutory duty and continue, for unlawful reasons, to delay a final decision granting Plaintiff's permit. Further, Defendants have offered no cognizable defense for EPA's statutory violations and failures.

Avenal adopts and incorporates the accompanying Memorandum as though fully set forth herein.  The Memorandum shows that Plaintiff has met all the applicable requirements for obtaining the permit it seeks.  The Memorandum also shows that Defendants violated the CAA and ignored the intent of Congress when they failed to meet the Act's deadline for issuing such a permit and that their failure is unreasonable and unsupported by the facts and the law.  And, despite Avenal's ongoing good faith efforts to work with EPA to secure a permit, EPA continues unreasonably and unlawfully to delay a final decision granting the permit.

Rather than offering any defense for its violations and failures, EPA answered Plaintiff's Complaint by arguing that "any remedy awarded to Plaintiff" must provide time for EPA to take two additional actions.  (Answer, Defenses ¶¶ 1-2.)  First, the Agency asserts that "any remedy awarded to Plaintiff" "must provide a reasonable time for EPA to ensure compliance with section 7 of the Endangered Species Act."  (Answer, Defenses ¶ 1.)  As discussed in the Memorandum, Plaintiff disagrees that the Endangered Species Act ("ESA") was a valid basis for delaying a decision on the permit, but this issue is now moot because the Fish and Wildlife Service of the U.S. Department of the Interior recently issued a formal "biological opinion" that concludes the consultation process under Section 7 of the ESA.

Second, EPA argues that "any remedy awarded to Plaintiff" "must also provide EPA with reasonable time to follow appropriate procedures to determine . . . whether Plaintiff has demonstrated that it will not cause or contribute to air pollution in excess of the recently-promulgated 1-hour national ambient air quality standard for nitrogen dioxide, effective April 12, 2010."  (Answer, Defenses ¶ 2.)  This standard, however, was not even proposed, much less finalized, until *after* the date by which EPA was statutorily required to make a final decision on Avenal's permit.  (Moreover, as explained in the attached Memorandum, Avenal was not informed

that it would be required to meet this standard until more than a month after it filed its Complaint.)

Under any logical extension of this defense, the permitting process could go on in perpetuity—in direct violation of Congress's intent under the CAA—while EPA continues to delay permit decisions in order to develop and "follow appropriate procedures" to determine whether a permit applicant has satisfied every new permitting requirement that the Agency decides to impose.

It is clear from the pleadings that this issue—whether EPA can lawfully withhold a permit in order to retroactively impose a new standard—is the sole remaining issue in this case.  Defendants do not and cannot point to any statute, regulation, or court decision to support their position on this issue.  And Defendants make no attempt to square this position with Section 165(c) of the CAA, which requires EPA to make a final decision on the permit within a year of receiving a complete permit application.  42 U.S.C. § 7475(c).  Moreover, the Agency's own rules provide a procedure for obtaining a "completeness determination" for a permit application and make it clear that subsequent events do not make an already completed application incomplete.  *See* 40 C.F.R. § 124.3(c) (2010).  Thus, Defendants have not offered a defense for their statutory violation, and Avenal is entitled to judgment as a matter of law.

EPA's attempt to impose new standards retroactively has left Avenal in an untenable position.  Because of new permitting requirements that EPA has issued in the last few months, and others that the Agency has proposed or announced but not yet issued, Avenal is now facing the prospect of a never-ending permitting process.  *See, e.g.*, 75 Fed. Reg. 2938 (Jan. 19, 2010) (proposed new standard for ozone); 75 Fed. Reg. 6474 (Feb. 9, 2010) (final rule establishing new standard for NO2); 75 Fed. Reg. 6827 (Feb. 11, 2010) (proposal to apply new PM modeling requirements to pending permit applications); 75 Fed. Reg. 17004 (Apr. 2, 2010) (final rule imposing new permitting requirements for greenhouse gases, including for permit applications

pending as of January 2, 2011); 75 Fed. Reg. 35520 (Jun. 2, 2010) (final rule establishing new standard for SO2).

The prospect of a perpetual permitting process is not just a theoretical concern. EPA has already finalized new permitting requirements for greenhouse gases ("GHGs") that, by their own terms, will apply to Avenal unless EPA chooses (or is ordered by this Court) to issue the Avenal permit within the next four months. *See* 75 Fed. Reg. 31514 (Jun. 3, 2010). Under EPA's new GHG rule, regardless of when a permit application was submitted, if the Agency refuses to grant the permit by the end of this year, then the permit applicant must go back and develop a new permit application that includes an extensive analysis of GHGs (without any guidance, at least to date, on how such an analysis should be performed or evaluated). *Id.* That analysis, and presumably anything else that EPA decides to require in the new application, would then have to go through another notice-and-comment process before EPA will even consider issuing a final permit. As the record in this case shows, this process (multiple rounds of public comment followed by the many months that EPA takes to review such comments) can go on for years. Then, if at any time during this process EPA decides to impose any new permitting standard or requirement, the permit applicant is sent back to starting line—all without any regard to the statutory deadline that Congress imposed on EPA for issuing permits.

Plaintiff understands that this Court has a very full docket and extensive obligations over the next six months, but Avenal respectfully requests that the Court decide this dispositive motion on an expedited basis and order EPA to grant the Avenal permit before the end of this year. Although the background in this case may appear somewhat complex, the legal issues presented to this Court are very straightforward. If this Court does not order EPA to grant the permit by year end, then Avenal will face a new set of legal and procedural issues and additional years of delay.

WHEREFORE, Avenal respectfully moves this Court for an Order Granting its Motion for

Judgment on the Pleadings and requiring that Defendants perform their mandatory duty to take final

agency action to issue Avenal's permit by December 31, 2010, and for an award of attorney's fees

and costs and such further relief this Court deems appropriate.


Date:  <u>August 25, 2010</u>                                   Respectfully submitted,

<div style="margin-left: 50%;">

<u>        /s/ LaShon K. Kell        </u>
LaShon K. Kell, Esq.  (DC Bar #483465)
BRACEWELL & GIULIANI LLP
2000 K Street, N.W., Suite 500
Washington, DC  20006
Telephone:  (202) 828-5816
Facsimile:   (202) 857-4835
E-mail:  lashon.kell@bgllp.com


<u>        /s/ Jeffrey R. Holmstead        </u>
Jeffrey R. Holmstead (DC Bar #457974)
BRACEWELL & GIULIANI LLP
2000 K Street, N.W., Suite 500
Washington, DC 20006-1872
Telephone: (202) 828-5852
Facsimile:  (202) 857-4812
E-mail:   jeff.holmstead@bgllp.com

***Counsel for Plaintiff,***
***Avenal Power Center, LLC***

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of August 2010, a true and complete copy of the foregoing Plaintiff Avenal Power Center, LLC's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) and Request for Expedited Decision, Memorandum in Support thereof, Statement of Material Facts, and proposed Order was served by the Court's electronic filing system on the following registered participants:

> Stephanie J. Talbert, Esquire
> Environmental Defense Section
> U.S. Department of Justice
> P.O. Box 23986
> Washington, DC  20026-3986
> E-mail:  stephanie.talbert@usdoj.gov
>
> ***Counsel for Defendants***
> ***U.S. Environmental Protection Agency and***
> ***Lisa P. Jackson, Administrator (EPA)***

and by first class mail, postage pre-paid, on the following:

> Brian Doster, Esquire
> Office of General Counsel
> U.S. Environmental Protection Agency
> 1200 Pennsylvania Avenue, N.W.
> Mail Code 2344A
> Washington, DC  20460
>
> Julie Walters, Esquire
> U.S. Environmental Protection Agency
> Region 9
> 75 Hawthorne St., Mail Code ORC-2
> San Francisco, CA  94105
>
> ***Counsel for Defendants***
> ***U.S. Environmental Protection Agency and***
> ***Lisa P. Jackson, Administrator (EPA)***

> _/s/ LaShon K. Kell_
> LaShon K. Kell, Esq.  (DC Bar #483465)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AVENAL POWER CENTER, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 10-cv-00383 (RJL)** |
| | **(Hon. Richard J. Leon)** |
| **U.S. ENVIRONMENTAL PROTECTION** | |
| **AGENCY,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF AVENAL POWER CENTER, LLC'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)**
**AND REQUEST FOR EXPEDITED DECISION**

Pursuant to Federal Rule of Civil Procedure 12(c), Plaintiff Avenal Power Center, LLC ("Avenal" or the "Company"), by and through its attorneys, submits this Memorandum in Support of its Motion for Judgment on the Pleadings and Request for Expedited Decision and states:

**I.      INTRODUCTION**

The Complaint Avenal filed against the U.S. Environmental Protection Agency ("EPA" or "the Agency") and Lisa P. Jackson, Administrator of the U.S. Environmental Protection Agency (the "Administrator") (collectively, "Defendants" or "EPA"), prevails as a matter of law.  Plaintiff prevails because Defendants failed to meet their statutory duties and deadlines, and because those failures, as well as Defendants' continuing failure, are unreasonable and factually and legally unjustified.

Avenal filed a Clean Air Act permit application that EPA found to be complete as of March 19, 2008.  Thus, according to Section 165(c) of the Clean Air Act ("CAA" or "the Act"), EPA was required to take final action on Avenal's permit application within one year—by no later than March 19, 2009.  *See* 42 U.S.C. § 7475(c) (2006).  Defendants, however, have failed to perform this

mandatory duty and continue unreasonably to delay a final decision to grant Plaintiff's permit. Defendants have offered no adequate defenses for EPA's statutory violations and failures. Accordingly, Avenal is entitled to judgment as a matter of law.

## II.   MATERIAL FACTS NOT IN DISPUTE

### A.   Procedural Background

Avenal is the developer of the proposed Avenal Energy Project ("AEP" or the "Project"), a 600-megawatt natural gas-fired power plant. (Compl. ¶¶ 2, 10.) The Project is a major stationary source that Avenal has proposed to construct in an area designated as attaining the National Ambient Air Quality Standards. (Compl. ¶ 18; Answer ¶ 18.) The plant would be located six miles northeast of the City of Avenal in Kings County, California. (Compl. Ex. A; Answer ¶ 21.)

Avenal first contacted EPA in August 2007 in regard to the application process for securing the necessary CAA permit, known as a Prevention of Significant Deterioration ("PSD") permit. (Compl. ¶¶ 2, 19; Answer ¶¶ 2, 19.) Avenal submitted its initial PSD permit application for construction and operation of the Project to EPA in February 2008. (Compl. ¶¶ 5, 20; Compl. Ex. A; Answer ¶¶ 5, 20, 21.) On March 19, 2008, the EPA notified Avenal, by letter, that its PSD permit application was complete. (Compl. ¶¶ 5, 21; Answer ¶¶ 5, 21.) A true and correct copy of that letter was attached to the Complaint and also hereto as Exhibit A. (*Id.*) EPA failed to issue a final decision on Avenal's PSD application by March 19, 2009. (Compl. ¶ 22; Answer ¶ 22.)

Following EPA's failure to timely grant or deny Avenal's PSD permit application,[1] EPA published a draft permit and its Statement of Basis and Ambient Air Quality Impact Report on June 16, 2009, in which EPA stated that Avenal met all Clean Air Act standards.[2] It was not until this point that EPA began the public comment period for the Project, which it also unilaterally extended for an additional three months—from a July 16, 2009 close to an October 15, 2009 close. Then, between September and October 2009, EPA went on to schedule a public information meeting, a public hearing, and a supplemental public hearing regarding the Project.[3]

Despite the close of EPA's extended public comment period almost a year ago,[4] EPA still has not taken final action on Avenal's PSD permit application.  (Compl. ¶ 22; Answer ¶ 22.)  Therefore, on December 21, 2009, Avenal provided the EPA with notice of its intent to file the present action. (Compl. ¶ 25; Answer ¶ 25.)  A true and correct copy of that letter was attached to the Complaint and also hereto as Exhibit B.  (*Id.*)

---

[1] Avenal's efforts to secure a PSD permit have been documented on the U.S. government website Regulations.gov. EPA makes PSD permitted documents available to the general public on Regulations.gov, which lists: (1) regulations, proposed and final rules; (2) application, petition or adjudication documents; and (3) public comments for numerous federal agencies, including EPA.  *See* EPA's public docket of Avenal's PSD application [hereinafter EPA's Avenal Docket], *available at* http://www.regulations.gov/search/Regs/home.html#docketDetail?R=EPA-R09-OAR-2009-0438 (last visited August 25, 2010).  The Regulations.gov website includes "Docket Folders," which contain relevant permit applications documents, public notices, and relevant correspondence between EPA and a party.  An index of the Avenal PSD permit documents listed on EPA's website are attached hereto as Exhibit C—please note that the documents are listed by post date and do not necessarily appear chronologically.  Matters of public record are properly the subject of judicial notice, and this Court may therefore consider them on review of a motion for judgment on the pleadings.  *See DiLorenzo v. Norton*, 2009 U.S. Dist. LEXIS 66862, at *9 n.7 (D.D.C. 2009); *Marshall County Health Care Auth. v. Shalala*, 988 F. 2d 1221, 1226 n.6 (D.C. Cir. 1993); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C. Cir. 1979).

[2] *See* EPA's Avenal Docket, EPA Region 9's Statement of Basis and Ambient Air Quality Impact Report, Doc. #EPA-R09-OAR-2009-0438-0004, p. 9 (June 2009) [hereinafter June 2009 Statement of Basis], attached hereto as Exhibit D.

[3] *See* EPA's Avenal Docket, Public Notices Regarding the Avenal Energy Project, Doc. #EPA-R09-OAR-2009-0438-0002 (June 16, 2009), Doc. #EPA-R09-OAR-2009-0438-0005 (August 28, 2009), Doc. #EPA-R09-OAR-2009-0438-0016 (September 11, 2009), attached hereto collectively as Exhibit E.

[4] *Id.*

B.      **The Clean Air Act**

According to the Defendants, each statutory provision cited by Avenal in its Complaint "speaks for itself and is the best evidence of its content."  (Answer ¶¶ 6, 13-17, 23, 24.)  Plaintiffs agree that these provisions are clear and do speak for themselves.  In relevant part, they are quoted below:

- Section 165(c) of the CAA states that:  "Any completed permit application under [the PSD program] for a major emitting facility in any area to which this part applies shall be granted or denied not later than one year after the date of filing of such completed application."  42 U.S.C. § 7475.  (*See* Compl. ¶¶ 3, 6, 15, 17, 22, 28.)

- Section 304(a) of the Act states that:  "any person may commence a civil action on his own behalf . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator. . . . The district courts of the United States shall have jurisdiction to compel (consistent with paragraph (2) of this subsection) agency action unreasonably delayed."  42 U.S.C. § 7604(a).  (*See* Compl. ¶¶ 1, 11, 12, 23, 30.)

- Section 304(b)(2) of the Act states that:  "No action may be commenced . . . under subsection (a)(2) of this section prior to 60 days after the plaintiff has given notice of such action to the Administrator."  42 U.S.C. § 7604(b)(2).  (*See* Compl. ¶¶ 24-26.)

- Section 304(d) of the Act states:  "The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  42 U.S.C. § 7604(d).  (*See* Compl. ¶ 30.)

## III.    STANDARD FOR JUDGMENT ON THE PLEADINGS

Federal Rule of Civil Procedure 12(c) specifically provides that a party may file a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay the trial . . . ." Fed. R. Civ. P. 12(c).  The moving party is not required to await discovery before filing such a motion.  *See Carlson v. Reed*, 249 F.3d 876, 878 n.1 (9th Cir. 2001).  "A motion for judgment on the pleadings under Rule 12(c) should be analyzed in the same manner as is a motion to dismiss under

Rule 12(b)(6).  *Dale v. Exec. Office of the President*, 164 F. Supp. 2d 22, 24 (D.D.C. 2001) (quoting

2 Moore's Federal Practice 3d § 12.38, 12-101 ("In fact, any distinction between them is merely

semantic because the same standard applies to motions made under either subsection."))."  *Moment*

*v. District of Columbia*, U.S. Dist. LEXIS 19458, at *7 (D.D.C. 2007).

Rule 12(d), however, states that if, on a motion for judgment on the pleadings, ". . . matters

outside the pleadings are presented to and not excluded by the court, the motion must be treated as

one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  "Factual allegations in briefs or

memoranda of law may likewise not be considered, particularly when the facts they contain

contradict those alleged in the complaint."  *Egilman v. Keller & Heckman, LLP*, 401 F. Supp. 2d

105, 110 (D.D.C. 2005) (citing *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994)).

Thus, while a court may not consider matters outside the pleadings when deciding a motion

for judgment on the pleadings, it may take into account "facts alleged in the complaint, any

documents attached to or incorporated in the complaint, matters of which the court may take judicial

notice, and matters of public record."  *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 47

(D.D.C. 2005) (citing *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir.

1997)).  "As far as what constitutes a matter 'outside the pleadings,' it is well established that courts

'are allowed to take judicial notice of matters in the general public record, including records and

reports of administrative bodies and records of prior litigation' without triggering the conversion

requirement."  *Jane Does I through III v. District of Columbia and MRDDA*, 238 F. Supp. 2d 212,

217 (D.D.C. 2002); *see also Doe v. District of Columbia*, 238 F. Supp. 2d 212, 216 (D.D.C. 2002)

("It is well established that courts are allowed to take judicial notice of matters in the general public

record, including records and reports of administrative bodies and records of prior litigation").

## IV.   ARGUMENT

### A.   EPA Confirmed that Avenal Met All Clean Air Act Permit Application Requirements

In February 2008, Avenal submitted its PSD permit application to EPA.[5]  Pursuant to the

CAA and EPA's implementing regulations, Avenal's application was required to, and did, include the

following:

- Avenal's Project Description and Engineering (Section 2.0), which included a description of the project, an overview of the Project's benefits to California, facility and transmission line details and schedule for construction, environmental design features and benefits, and a summary of applicable laws, ordinances, regulations and standards;

- AEP's impact analysis on the agriculture and soils in the vicinity of the Project (Section 6.4.2);

- AEP's impact analysis on the biological resources on and in the vicinity of the "Site and Project linear corridors" (Section 6.6.2);

- AEP's impact analysis on the industrial zoned lands of the City of Avenal (Section 6.9.3);

- AEP's impact analysis on the socioeconomic aspects of region surrounding the Project (Section 6.10);

- AEP's air quality impact analysis, air quality modeling, source impact analysis and Class I Area evaluation (Section 6.2); and

- AEP's impact analysis on the public's health, including the methodology and results of the human health risk assessment performed to assess potential impacts and public exposure associated with airborne emissions from the construction and operation of the Project." (Section 6.16).[6]

*See* 40 C.F.R. § 52.21(k)-(p) (2010).

---

[5] Avenal's February 15, 2008 cover letter to its PSD application stated:  "Enclosed please find an Application for a Prevention of Significant Deterioration (PSD) Permit for the proposed Avenal Energy Project, filed by Avenal Power Center, LLC. . . . This AFC is being filed with the California Energy Commission on February 19, 2008.  The portions of the AFC materials that are relevant to the PSD permitting process, as well as air quality modeling data on compact disc, are enclosed for your review."  EPA's Avenal Docket, Letter from Sierra Research to EPA's Region 9, Doc. #EPA-R09-OAR-2009-0438-0003.1 (February 15, 2008), attached hereto as Exhibit F.

[6] EPA's Avenal Docket, Attachment to Avenal's February 2008 Application, Doc. #EPA-RO9-OAR-2009-0438-0003 (including hyperlinks to CEC document submissions in Avenal's PSD Application Information), attached hereto as Exhibit G.

On March 19, 2008, EPA certified the completeness of Avenal's application.  *See* Exhibit A. EPA cannot process a PSD permit application "until the applicant has fully complied with the application requirements for that permit."  40 C.F.R. § 124.3(a)(2).  In accordance with the requirements of the CAA and EPA's implementing regulations,[7] EPA notified Avenal that its PSD permit application was complete:

> [Avenal's] application was submitted with the letter of transmittal dated February 15, 2008 and received by this office on February 20, 2008. Additional application copies also were provided on March 3, 2008.  The application is for the construction and operation of a 600 MW combined-cycle electric power generating plant and ancillary facilities. . . . After our review of the above application, as well as follow-up information submitted per our request and received on March 14, 2008 and March 17, 2008, we have determined that the PSD permit application is administratively complete as of March 19, 2008.

Exhibit A.

Thus, EPA's letter of completeness also certified that Avenal had complied with the PSD application requirements under the Clean Air Act.  "If the application is incomplete, the Regional Administrator shall list the information necessary to make the application complete."  40 C.F.R. § 124.3(c).  The date on which the Regional Administrator notifies the applicant that the application is complete—here, March 19, 2008—is also the application's effective date.  40 C.F.R. §124.3(f). Section 165(c) of the CAA then dictates that EPA must render a decision on the PSD application within a year from that date.  *See* 42 U.S.C. § 7475(c).

During the year following EPA's determination of completeness, EPA may then seek public comments, hold public hearings, analyze reports and testing results, and request any additional or clarifying information it believes necessary to render its decision on the PSD permit application.  *See*

---

[7] After receiving Avenal's permit application, EPA was required to review it within 30 days of receipt to determine if it was complete.  *See* 40 C.F.R. § 124.3 (2010).

40 C.F.R. §§ 124.10-124.12.  Once the completeness determination has been made, however, "the Regional Administrator [or delegated authority] may request additional information from an applicant but only when necessary to clarify, modify, or supplement previously submitted material. *Requests for such information will not render an application incomplete*."  40 C.F.R. § 124.3(c) (emphasis added).

### B.      EPA Failed To Meet Its Statutory Obligations Under the CAA

#### 1.      *EPA has ignored its statutory duties under the Clean Air Act*

EPA failed to render a decision on Avenal's PSD permit application by March 19, 2009—the deadline set by Section 165(c) of the CAA—despite the fact that Avenal fulfilled all the PSD application requirements under the Act and despite the fact that EPA confirmed the completeness of the application and compliance with applicable regulations.  (*See* <u>Exhibit A</u>; Answer ¶ 22.) According to at least one court, a "completeness" determination equates to full compliance with federal requirements, and once an application is deemed complete, a reviewing entity does not have the legal authority to compel any additions or changes to that application.  *See East Bay Recycling v. Cahill*, 2005 U.S. Dist. LEXIS 11817, at *10 (S.D.N.Y. 2005) (holding that unless an entity is specifically permitted to require additional information even after an application has been deemed complete, that entity would not be entitled to obtain additional information).  Thus, EPA's failure to render a timely decision should not be legally excused by its own subsequent actions or additional requests.

It was not until June 2009—after the statutory deadline for making a final permit decision had already passed—that EPA finally published a draft permit along with its June 2009 Statement of

Basis, which "describe[d] the legal and factual basis for the proposed permit per 40 C.F.R. § 124.7, including requirements under the PSD Regulation at 40 C.F.R. § 52.21."[8]

In the Executive Summary of its June 2009 Statement of Basis, EPA stated:

The Avenal Power Center, LLC has applied for a Prevention of Significant Deterioration (PSD) permit under the federal Clean Air Act (CAA), 42 U.S.C. Section 7401 et seq., for the Avenal Energy Project, a new power plant that will generate 600 megawatts (MW, nominal) of electricity while firing natural gas. The power plant will be located in Kings County, California, within the San Joaquin Valley Air Pollution Control District. ***The proposed PSD permit is consistent with the requirements of the PSD program for the following reasons***:

o   The proposed permit requires the Best Available Control Technology (BACT) for Nitrogen Oxides (NO2), Carbon Monoxide (CO), Total Particulate Matter (PM) and Particulate Matter under 10 micrometers (PM10);

o   The ***proposed emission limits will protect the National Ambient Air Quality Standards (NAAQS) for NO2, CO, and PM10***. There is no NAAQS set for Total Particulate Matter (PM);

o   The ***facility will not adversely impact soils and vegetation, or air quality, visibility, and deposition in Class I areas***, which are parks or wilderness areas given special protection under the Clean Air Act.[9]

Thus, EPA had concluded, as of June of 2009, that Avenal had met all requirements for a PSD permit.  Still, EPA failed to render a decision on Avenal's application.  Instead, EPA continued to delay its decision by slow-walking Avenal through the review process, as shown in the public record and discussed below.

### 2.      *EPA has unreasonably delayed issuance of Avenal's PSD permit for well over a year*

EPA has unreasonably and unlawfully delayed the grant of Avenal's permit.  Part C of the CAA defines EPA's responsibilities for permitting new facilities, including new energy projects.  *See* 42 U.S.C. § 7470.  Among the purposes of Part C is to ensure economic growth as long as an

---

[8] June 2009 Statement of Basis 7, Section IV.A.

applicant meets the appropriate air quality standards and submits the required testing analyses and reports.[10]  As stated above, according to EPA's June 2009 Statement of Basis, Avenal has done just that.

In the conclusion of its June 2009 Statement of Basis, EPA indicated that the approval of Avenal's permit was all but inevitable:

> EPA is proposing to issue a PSD permit to the Avenal Power Center, LLC for the Avenal Energy Project. ***We believe that the proposed project will comply with PSD requirements including the installation and operation of BACT, and will not cause or contribute to a violation of the NAAQS, or of any PSD increment.*** We have made this determination based on the information supplied by the applicant, our review of the analyses contained in the permit application, and other relevant information contained in the administrative record for this proposed action. (Emphasis added.)[11]

No comments were filed to dispute these findings in any material way.[12]  Despite this fact, and EPA's own conclusion that that Avenal met all applicable requirements and that the Project would not cause an exceedance of any applicable National Ambient Air Quality Standards (NAAQS), including the NAAQS for nitrogen dioxide (NO2),[13] EPA continued to withhold its decision on Avenal's PSD permit.

Instead of proceeding with the public comment period after determining Avenal's application was complete in March 2008, EPA failed to request any public comments or schedule any public meetings for more than a year.[14]  Despite numerous requests from Avenal, it was not until June 16, 2009—three months after the Agency was statutorily required to issue a final decision on Avenal's

---

[9] *Id.* at 6 (emphasis added).
[10]  *See generally Clean Air Act*, EPA, http://www.epa.gov/air/caa/ (last visited August 25, 2010).
[11] June 2009 Statement of Basis 30.
[12] *See* generally EPA's Avenal's Docket, Public Comments.
[13] June 2009 Statement of Basis 6, 30.
[14] EPA's Avenal Docket, Public Notice, Doc. # EPA-R09-OAR-2009-0438-0002 (June 16, 2009).

application—that EPA issued its first request for public comment.[15]  That notice stated that "[a]ll comments on the proposed permit, and [any] request for a Public Hearing, must be received by email or postmarked by **July 16, 2009**."[16]  Rather than reviewing and responding to the comments that were submitted by July 16 and then issuing a final permit, EPA instead published two additional notices for public comments on August 28, 2009, and September 11, 2009, and held three separate public meetings and hearings on September 30, 2009, October 1, 2009, and October 15, 2009.[17]

At the conclusion of this string of notices and hearings, however, EPA still failed to take action on Avenal's PSD permit.  When it became clear that the Agency would not issue the permit by the end of the year, Avenal had little choice but to notify EPA of its intent to file this civil action, which it did on December 21, 2009.  *See* Exhibit B.

### 3.  *EPA now seeks to use its own unlawful delay as justification for retroactively imposing new standards on Avenal*

Shortly after Avenal filed its Complaint in this case, EPA informed Avenal that it was imposing a new requirement on the Project:  in order to obtain the permit the Company had been seeking for more than 2 years, the Company would now be required to develop and submit a new study showing that the Project would not cause an exceedance of EPA's new 1-hour standard for NO2.[18]  As part of its 2008 permit application, Avenal had submitted analysis showing that the

---

[15] *Id.*

[16] *Id.* (emphasis in original).

[17] *See* EPA's Avenal Docket, Public Notices Regarding the Avenal Energy Project, Doc. # EPA-R09-OAR-2009-0438-0002 (June 16, 2009), Doc. # EPA-R09-OAR-2009-0438-0005 (August 28, 2009), Doc. # EPA-R09-OAR-2009-0438-0016 (September 11, 2009).

[18] Avenal filed its Complaint on March 9, 2010.  EPA did not inform Avenal that it was required to meet the new NO2 until shortly after it received an April 21, 2010 letter from Earthjustice, on behalf of a number of environmental groups opposing Avenal's permit.  *See* EPA's Avenal Docket, Email to EPA, Doc. #EPA-R09-OAR-2009-0438-0045.1 (May 5, 2010); Letter to EPA, Doc. #EPA-R09-OAR-2009-0438-0046 (May 11, 2010); EPA letter to Avenal and attachment, Doc. #EPA-R09-OAR-2009-0438-0048 thru 0048.1 (June 15, 2010), attached collectively hereto as Exhibit H.  EPA's Avenal Docket indicates that EPA received an April 21, 2010 letter from Earthjustice, arguing that, because the new NO2 standard had become effective on April 12, 2010, and because the Agency had not yet issued the final Avenal permit, Avenal should be required to go back and conduct an additional analysis to show that the Project would not cause the new 1-hour standard to be exceeded.  It further argued that EPA would need to provide an

Project would not cause an exceedance of the EPA's longstanding annual standard for NO2, which EPA accepted and confirmed.[19]  Avenal had not submitted a similar analysis for the new supplemental 1-hour standard for the simple reason that no such standard existed at the time; nor was there any indication that EPA was even considering a 1-hour standard when the application was submitted.  In fact, EPA *did not even propose* its new NO2 standards until July 2009—well after the date by which the permit should have been issued.[20]

Thus, EPA was able to propose a major new standard, allow sufficient time for hearings and public comment, consider and respond to hundreds of voluminous comments dealing with scientific, technical and legal issues, and then promulgate a final standard in less time than has passed since the Agency missed its statutory deadline for issuing a PSD permit for the Avenal Project.  Although EPA did publish lengthy and detailed Federal Register notices proposing and then finalizing the new 1-hour NO2 standard, there was nothing in these notices to suggest that this new standard would somehow apply retroactively to permit applications submitted years before.  *See* 74 Fed. Reg. 34404 (July 15, 2009); 75 Fed. Reg. 6474 (Feb. 9, 2010).  In fact, in responding to comments about the potential implications of the new standard for Clean Air Act permits, the Agency seemed to make it quite clear that the new standard would only apply to companies applying for such permits in the future:

> The EPA acknowledges that a decision to promulgate a new short-term NO2 NAAQS will clearly have implications for the air permitting process. The full extent of how a new short-term NO2 NAAQS will affect the NSR process will need to be carefully evaluated. First, major new and modified sources *applying for NSR/PSD* permits will initially be required to demonstrate that their proposed emissions

---

opportunity for public comment on this additional analysis before issuing the final permit.  EPA's Avenal Docket, Email Letter Transmittal from Earthjustice to EPA, Doc. #EPA-R09-OAR-2009-0438-0044 (April 21, 2010), attached hereto as Exhibit I.

[19] June 2009 Statement of Basis 6.

[20] 74 Fed. Reg. 34404 (July 15, 2009).

> increases of NOX will not cause or contribute to a violation of either the annual or 1-
> hour NO2 NAAQS.

75 Fed. Reg. at 6525 (emphasis added).  It thus appeared that, consistent with EPA's past practice,

the new standard would only be relevant to facilities "applying for" Clean Air Act permits in the

future, not to companies such as Avenal that had already applied for such permits in the past.

It was not until May of 2010, over a year after EPA was legally required to issue the permit

and more than a month after Avenal had filed the present action, that the Agency advised the

Company that EPA would not issue a final permit until Avenal submitted a new modeling analysis

of the new 1-hour NO2 standard.[21]  Avenal also learned at this time that, once it submitted this

analysis and the Agency found it to be acceptable (apparently based on guidelines that were yet to be

developed), there would need to be another round of public comments before the Agency would

issue the final permit that, by law, should have been issued more than a year before.  *See* Answer,

Defenses ¶ 2.

Notwithstanding its frustration with this process, Avenal continued to work with EPA to

supply information and analysis to show that the Project would, in fact, meet the new NO2

standard.[22]  In submitting such information and analysis, however, Avenal made it very clear that it

disagreed with EPA's position that the new 1-hour standard applied to any decision about the

proposed permit:

> EPA is now taking the position that, before we can get our PSD permit, we must
> go back and do additional modeling to meet a new requirement that had not
> even been proposed as of the deadline date for EPA to issue the PSD permit.  As
> you know, we believe that EPA's position on this matter is legally improper, but
> we nevertheless agreed to conduct the additional modeling in the hope of

---

[21] *See supra* Fn. 18.

[22] *See supra* Fn. 18, Exhibit H.  *See also* EPA's Avenal Docket, Letters from Bracewell & Giuliani, LLP to U.S.
Department of Justice and EPA, Doc. #EPA-R09-OAR-2009-0438-0053 (June 28, 2010) and Doc. #EPA-R09-OAR-
2009-0438-0077, attached hereto collectively as Exhibit J.  *See also* Response to Issues Raised in the EPA Region 9
Letter of June 15, 2010, Doc #EPA-R09-OAR-2009-0438-0054.

> obtaining the permit as quickly as possible and without the need for litigation. On May 13, 2010, we submitted this additional modeling analysis, which concluded that the proposed project would not cause or contribute to a violation of the new 1-hour NO2 National Ambient Air Quality Standard. . . After waiting more than a month for EPA to review this analysis, we received the June 15th letter from EPA Region 9. . .[which] simply requests additional analysis and explanation that are already in the permitting record.[23]

Although Avenal believes that EPA's continuing refusal to grant the permit is unreasonable and unlawful, Avenal has worked in good faith to develop and provide the information that EPA claims is necessary to show that the Project will not cause any exceedance of the new 1-hour standard. *Id.* EPA, however, continues to demand additional information without providing Avenal with clear guidance as to the type of analysis EPA views as acceptable.[24]

## C.   EPA Ignores the Clear Language of the Clean Air Act, the Clear Intent of Congress, and Court Decisions Regarding the Retroactive Application of New Requirements

EPA has not only failed to meet its statutory obligations, but has frustrated the intent and purpose of Part C of the CAA and is attempting to create a permit application process that could continue in perpetuity without resolution.  Congress included Section 165(c) as part of the 1977 Amendments to the CAA to address its concern that the PSD program could fall prey to unreasonable bureaucratic delays.  *See* S. Rep. No. 94-717, at 23 (1976). The purpose of this section is specifically discussed in the Senate Committee on Public Works Report regarding the 1977 Amendments, which states:

> Inherent in any review-and-permit process is the opportunity for delay.  The Committee does not intend that the permit process to prevent significant deterioration should become a vehicle for inaction and delay.  To the contrary, the States and Federal agencies must do all that is feasible to move quickly and responsibly on permit applications and those studies necessary to judge the

---

[23] Letter from Bracewell & Giuliani, LLP to U.S. Department of Justice and EPA, Doc. # EPA-R09-OAR-2009-0438-0053 (June 28, 2010).
[24] EPA's Avenal Docket, Letter from EPA to Avenal, Doc. #EPA-R09-OAR-2009-0438-0078 (August 12, 2010), attached hereto as Exhibit K.

impact of an application. *Nothing could be more detrimental to the intent of this section and the integrity of this Act than to have the process encumbered by bureaucratic delay.*

*Id.* (emphasis added).

The plain language of Section 165(c) confirms Congress's expressed intent that PSD permitting procedures should *not* delay construction projects. If Congress had intended to allow EPA to bog down and delay the permit process by retroactively applying new requirements, then it would not have explicitly set an end date for EPA's permit decision—one year after the receipt of a complete application. *See* 42 U.S.C. § 7475(c). EPA's disregard of its statutory mandate to take final agency action and grant Avenal's PSD permit application is exactly the type of inaction and delay Congress sought to prevent.

EPA's Answer, and indeed the history of this case, would essentially read Section 165(c) completely out of the CAA. In the Agency's view, it can apparently avoid its statutory obligation forever as long as it continues to develop new permitting rules. This is clearly not what Congress intended. Nothing in Part C of the CAA contemplates the imposition of perpetual, additional permitting requirements. *See generally* 42 U.S.C. §§ 7470-7492.

EPA actions in this case also fly in the face of numerous court decisions disfavoring the retroactive application of new requirements. "Those regulated by an administrative agency are entitled to know the rules by which the game will be played." *Alaska Prof'l Hunters Ass'n, Inc. v. FAA*, 177 F.3d 1030, 1035 (D.C. Cir. 1999). "[O]ngoing proceedings should not be interrupted when proposed regulations become final. A contrary rule would create havoc in EPA's permit development procedures." *Alabama v. EPA*, 557 F.2d. 1101, 1110 (5th Cir. 1977). Thus, EPA's attempt to hold up Avenal's permit so that it may apply new laws and policies retroactively is inconsistent with a jurisprudential presumption against such retroactive rulemaking. As the Supreme

Court has stated:   "'Retroactivity is not favored in the law,' and its interpretive corollary that 'congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.'"   *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994).

Any energy project depends on the rule of law to provide clear standards and some degree of certainty so that engineers can design a proposed project and assess its impacts, project developers can gauge the likelihood of a return on investment in the project, and lenders can weigh the risk of lending money to finance the project.   "Excessive delay saps the public confidence in an agency's ability to discharge its responsibilities and creates uncertainty for the parties, who must incorporate the potential effect of possible agency decision-making into future plans."   *Cutler v. Hayes*, 818 F.2d 879, 896 (D.C. Cir. 1987) (internal citations omitted).   "Moreover, unjustifiable delay may undermine the statutory scheme and could inflict harm on individuals in need of final action."   *Id.* Thus, rewarding EPA's violations and failures with an opportunity to laden Avenal's permit with additional requirements—established more than year after the permit should have been issued— sends the wrong message to the Agency, to the applicant, and to countless other developers, investors, and workers.

### D.      EPA's Defenses For Its Failures Are Legally Insufficient

EPA's Answer offered no cognizable defense for its statutory failures and delays.  And, while Avenal acknowledges that EPA's responsibilities are numerous and time-consuming, Avenal has, in good faith, attempted to work with EPA over the last two and a half years to secure a decision on its PSD permit—to no avail.

#### 1.      *EPA's defenses do not meet the legal standards*

Federal Rule of Civil Procedure 8(c) specifically provides that "a party must affirmatively state any avoidance or affirmative defense" when responding to a pleading.  EPA's defenses simply

reference possible remedies available to Avenal; EPA's Answer provides no factual or legal reason to defend its actions.  (*See generally* Answer.)  It is unclear why EPA chose to answer Avenal's Complaint without asserting defenses for its actions.

Although Rule 8(c) does not mention waiver or forfeiture as a consequence of not timely asserting an affirmative defense, the D.C. Circuit has held that "[a] party's failure to plead an affirmative defense . . . generally 'results in the waiver of that defense and its *exclusion from the case*.'"  *Harris v. Sec'y of the Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997) (quoting *Dole v. Williams Enters., Inc.*, 876 F.2d 186, 189 (D.C. Cir. 1989) (emphasis in original)).  The D.C. Circuit has held in no uncertain terms that "Rule 8(c) means what it says: a party must first raise its affirmative defenses in a responsive pleading before it can raise them in a dispositive motion." *Id*. at 345; *see also Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) ("[A]n affirmative defense not raised by answer cannot be raised in dispositive motions that are filed post-answer.").  Accordingly, it is also unclear what defense EPA believes it could raise in its response to this motion.

### 2.      *EPA's "defenses" support Avenal's claims*

EPA does not, in essence, dispute the allegations put forth by Avenal in its Complaint because EPA's defenses are not "defenses tending to exculpate defendants from liability." *Williams Enters., Inc. v. Strait Mfg. & Welding Inc.*, 728 F. Supp. 12, 23 (D.D.C. 1990), *aff'd in part and remanded in part on other grounds sub nom. Williams Enters., Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230 (D.C. Cir. 1991).  In its Answer, EPA stated its defenses in this case:

> With respect to any remedy awarded to Plaintiff, such remedy must provide a reasonable time for EPA to ensure compliance with section 7 of the Endangered Species Act, 16 U.S.C. § 1536. Pursuant to section 7, EPA is currently engaged in formal consultation regarding the Avenal Energy Project with the United States Fish & Wildlife Service.  (Answer, Defenses ¶ 1.)

> With respect to any remedy awarded to Plaintiff, such remedy must also provide EPA with reasonable time to follow appropriate procedures to determine, pursuant to section 165(a)(3) of the Clean Air Act, 42 U.S.C. § 7475(a)(3), whether Plaintiff has demonstrated that emissions from the Avenal Energy Project will not cause or contribute to air pollution in excess of the recently-promulgated 1-hour national ambient air quality standard for nitrogen dioxide, effective April 12, 2010. 75 Fed. Reg. 6474 (Feb. 9, 2010). (Answer, Defenses ¶ 2.)

Rather than seeking to exculpate EPA from liability, or even limit its liability, EPA's defenses in this case seek to limit the *remedy* that may be awarded to the Plaintiff. Thus, EPA offers no defense for its actions (and inaction). Furthermore, because the burden of proving an affirmative defense rests with the Defendants, Avenal's "burden is met by a sufficient 'showing . . . that there is an absence of evidence to support the nonmoving party's case.'" *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1032 (D.C. Cir. 1988) (quoting *Celotex v. Catrett*, 477 U.S. 317, 325 (1986)).

### 3.    The Endangered Species Act "defense" is no longer at issue

EPA's first stated "defense" is now moot. As noted above, EPA's first "defense" was that it needed more time "to ensure compliance with section 7 of the Endangered Species Act . . . [because] EPA is currently engaged in formal consultation regarding the Avenal Energy Project with the United States Fish & Wildlife Service." (Answer, Defenses ¶ 1.) On August 9, 2010, however, the U.S. Fish & Wildlife Service ("USFWS") sent a letter to EPA containing the final Biological Opinion necessary to conclude "formal consultation" on the Project under Section 7 of ESA.[25] Thus, EPA can no longer excuse its failure to make a final permit decision by pointing to the ESA process.[26]

---

[25] EPA's Avenal Docket, Letter from USFWS to EPA, Doc. #EPA-R09-OAR-2009-0438-0079 (August 9, 2010), attached hereto as <u>Exhibit L</u>.

[26] According to the August 9 Biological Opinion, the only condition sought by USFWS is an amendment to the PSD permit simply accepting the conditions included in the Biological Opinion. *Id.* at 4 (containing USFWS's Biological Opinion for the Proposed Avenal Energy Power Center). This requested "amendment" is administrative and does not excuse EPA's failure to decide Avenal's permit within the statutory deadline.

Even if the issue were not moot, it would not be an adequate defense.  EPA does not have a legal obligation to withhold a PSD permit until the ESA consultation is complete—a fact that Courts have recognized in a variety of similar contexts.  *See Tribal Village of Akutan v. Hodel*, 869 F.2d 1185, 1193-94 (9th Cir. 1989) (finding no ESA § 7(d) violation where the government action on leases occurred before the completion of ESA § 7 consultation because "stipulations" or "disclaimers" on future ESA compliance had been inserted into the leases); *Village of False Pass v. Clark*, 733 F.2d 605, 610-12 (9th Cir. 1984) (same); *North Slope Borough v. Andrus*, 642 F.2d 589, 611 (D.C. Cir. 1980) (same); *Conservation Law Found. v. Andrus*, 623 F.2d 712, 714-16 (1st Cir. 1979) (same). Thus, EPA cannot claim that its failure to issue the permit by March 19, 2009, was justified by the ongoing ESA process.  In any event, pointing to the formal ESA consultation with USFWS is not a proper defense to the allegations set forth in Avenal's Complaint.  Section 165(c) requires that EPA—not USFWS—follow the necessary procedures to render a decision on a PSD permit within a year of receiving a complete application.

Even if EPA could rely on the consultation process with USFSW as a proper defense for its delay in deciding Avenal's permit application, that argument has little traction given the time line of events in this matter.  In June 2009, EPA stated that "Formal consultation with the U.S. Fish and Wildlife Service under Section 7 of the federal Endangered Species Act (ESA) concerning the Avenal Energy Project is ongoing and *is nearing completion*."[27]  Moreover, after receiving USFWS's draft biological opinion, regarding the ESA Section 7 consultation, on July 1, 2009, EPA waited almost six months to provide its final comments to USFWS.[28]  As stated above, this issue is

---

[27] June 2009 Statement of Basis 6 (emphasis added).

[28] *See* EPA's Avenal Docket, Letter from USFWS to EPA's Region 9, at 4, Doc. # EPA-R09-OAR-2009-0438-0079.

now moot, but Avenal reiterates that EPA is not required to wait until the conclusion of the ESA consultation process before issuing a final PSD permit.

### 4.    *A desire to retroactively impose new standards is not a proper defense*

EPA's only other "defense" stands in direct contradiction to Congress's intent and legal precedent.  The Agency simply asserts that "any remedy awarded to Plaintiff" "must also provide EPA with reasonable time to follow appropriate procedures to determine . . . whether Plaintiff has demonstrated that it will not cause or contribute to air pollution in excess of the recently-promulgated 1-hour national ambient air quality standard for nitrogen dioxide, effective April 12, 2010."  (Answer, Defenses ¶ 2.)

To put this "defense" in context, it must be noted again that:  (1) EPA did not even *propose* its new 1-hour standard until more than three months after the Agency was statutorily required to make a *final* decision on Avenal's permit, s*ee* 74 Fed. Reg. 34403 (July 15, 2009); (2) EPA did inform Avenal that it was required to meet the new NO2 emission standard until more than a month after Avenal filed its Complaint.[29]   Under EPA's logical extension of this defense, the permitting process could go on in perpetuity because the Agency may continue to change the rules for permits by applying new rules and standards retroactively to applications submitted years before.

The language of Section 165(c) and Congress' intent is not debatable—EPA must decide a permit application within a year of receiving a complete application.  The Supreme Court's position is clear—"The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance."  *Landgraf*, 511 U.S. at 271.

---

[29] *See supra* Fn. 18.

Despite the clear intent of Congress and the Supreme Court, Avenal worked with EPA to show the Project would meet the newly proposed NO2 standard even though its application was deemed complete before the new standard was proposed and in spite of the fact that EPA was statutorily obligated to render a decision before the standard was finalized.[30]   Avenal submitted additional studies using accepted modeling protocols available at the time of submission to show that the Project did in fact, comply with the new NO2 standards.[31]   Unlike Avenal, EPA does not and cannot point to any statute, regulation, or court decision to support this "defense" and it makes no attempt to square this position with Section 165 of the CAA.

###### E.    The Court Has Discretion to Compel EPA to Meet its Statutory Obligations.

EPA has unlawfully withheld its decision on Avenal's PSD Permit application, and this violation merits equitable relief.   Section 304(a) of the Act provides that this Court has the jurisdiction to compel the Administrator to perform a non-discretionary duty that has been unreasonably delayed.   *See* 42 U.S.C. § 7604(a).   Respectfully, Avenal requests that this Court declare that EPA has violated the CAA by failing to take final action on Avenal's PSD permit application not later than one year after the date that Avenal filed its completed application.   Avenal believes that, based on EPA's own findings, EPA should approve its application and grant Avenal a PSD permit.   Thus, in addition, Avenal seeks an order from this Court compelling EPA to take final agency action and grant Avenal's PSD permit application by December 31, 2010, should the Court decide in Plaintiff's favor.   Avenal believes that its request is justified based not only on the procedural facts detailed above, but also based on the law, which is, in the first instance, a relatively

---

[30] *See generally* EPA's Avenal Docket.
[31] EPA's Avenal Docket, Letter from Sierra Research to USEPA, Doc. #EPA-R09-OAR-2009-0438-0047 (May 17, 2010), attached hereto as <u>Exhibit M</u>; Letter from Bracewell & Giuliani, LLP to U.S. Department of Justice and EPA, Doc. # EPA-R09-OAR-2009-0438-0053.

simple exercise in statutory interpretation, and is, in the second instance, an inquiry into the balance of the equities in exercising the Court's inherent authority to grant the requested relief.

### 1.    EPA has plainly violated Section 165(c) of the Clean Air Act

EPA admits that it found Avenal's PSD application complete on March 19, 2008 (Answer ¶ 5), that it failed to render a decision on Avenal's PSD permit application by March 19, 2009 (Answer ¶ 22), and that it has yet to render any decision (Answer ¶ 7).  Again, Section 165(c) of the CAA states:  "Any completed permit application under section 7410 of this title [the PSD permitting program] for a major emitting facility in any area to which this part applies <u>shall</u> be granted or denied not later than one year after the date of filing such a completed application. "  42 U.S.C. § 7475(c) (emphasis added).

The Supreme Court has made it clear that when a statute uses the word "shall," as Section 165(c) does here, Congress has imposed a mandatory duty upon the subject of the command.  *See United States v. Monsanto*, 491 U.S. 600, 607 (1989) (by using "shall" in civil forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied"); *Pierce v. Underwood*, 487 U.S. 552, 569-70 (1988) (Congress' use of "shall" in housing subsidy statute constitutes "mandatory language"); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 n. 15 (1981) (same under Fair Labor Standards Act); *see also In re Barr Laboratories, Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991) (same under Food, Drug and Cosmetic Act).  EPA's admission of these allegations demonstrates a clear violation of a mandatory duty under Section 165(c) to grant or deny the permit within one year of filing the completed application.

## 2. *This Court should exercise its equitable powers to compel EPA and its Administrator to render a final decision on Avenal's application*

Avenal has a remedy available under the CAA for EPA's violation of Section 165(c)—it may seek an order compelling the Administrator to perform her nondiscretionary duty decide Avenal's PSD permit application.  *See* 42 U.S.C. § 7604(a) ("[D]istrict courts shall have jurisdiction . . . to order the Administrator to perform such act or duty"); *New York Public Interest Research Group, Inc. v. Whitman*, 214 F. Supp. 2d 1, 3-4, 6 (D.D.C. 2002).  As discussed in Section IV.D., *supra*, EPA offers no defense for its failure to take final action to grant or deny the application.  (*See* Answer, Defenses ¶¶ 1-2.)

Avenal argues that EPA's delay is egregious and, whether intended or not, has the effect of delaying the permit until such time as Avenal complies with additional, and as-yet-unwritten, new standards and requirements.  Each of the parties' arguments goes not to the violation—which is not in doubt—but to the remedy to be provided by the Court.  In assessing whether EPA's statutory violation necessitates the Court's exercise of its equitable powers, D.C. Circuit case law focuses on a reasonableness test, and "this court has stated generally that a reasonable time for an agency decision could encompass months, occasionally a year or two, but not several years or a decade." *Midwest Gas Users Ass'n v. FERC*, 833 F.2d 341, 359 (D.C. Cir. 1987).

Specifically, this test is outlined in the *TRAC* case and directs the Court to weigh six factors (the "*TRAC* factors"):

(1)     the time the agencies take to make decisions must be governed by a rule of reason;

(2)     where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)     delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at risk;

(4)     the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)     the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)     the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Sandoz, Inc. v. Leavitt*, 427 F. Supp. 2d 29, 38 (D.D.C. 2006) (quoting *Telecomm. Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*")); *see also In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999).  The first two *TRAC* factors have no impact where, as in the present case, a deadline is imposed by Congress—here, Section 165(c) of the CAA provides the foundation for the "rule of reason."  *In re Barr*, 930 F.2d at 75; *Sandoz*, 427 F. Supp. 2d at 38.

The third *TRAC* factor weighs in favor of compelling EPA action in this case.  The applicability of this factor is not readily apparent because EPA's delay does not directly risk human health and welfare, except in broad economic terms, at which point the inquiry overlaps with the fifth *TRAC* factor.  *See In re Barr*, 930 F.2d at 75.  Where the petitioner's main interest may be commercial, however, courts have recognized that the commercial activity may contribute to the benefit of the public welfare.  *Id.*  ("[Petitioner] makes money getting useful drugs into the hands of sick people.").  In this case, the Court need not speculate about the value of the Project for the public welfare because the California Energy Commission ("CEC") has already found that "The Avenal

Energy Project will provide a degree of economic benefits and electricity reliability to the local area."[32] This factor therefore supports EPA's fulfilling its statutory obligation.

Weighing the fourth *TRAC* factor—agency activities of a higher or competing priority—can be difficult when an agency has failed to process applications under a congressional deadline.  Here, the PSD permitting process "does not take the form of a first in, first out operation."  Whether other PSD applications are "stuck in the ether," however, "constitutes a factor that this court considers in determining the reasonableness" of EPA's delay in processing or completing its review of Avenal's PSD permit application, as does "whether that delay is 'egregious.'"  *Sandoz*, 427 F. Supp. 2d at 39 (citing *In re Monroe Commc'ns Corp.*, 840 F.2d 942, 945 (D.C. Cir. 1988)).  Certainly, the retroactive imposition of new emission standards on Avenal's application speaks to "unreasonableness," "egregiousness," and, arguably, whether Avenal's permit will become "stuck in the ether."

Moreover, as of the filing of this motion, EPA Region 9's website indicates that there are no other PSD permits that are the subject of public comment periods at this time.[33]  As such, an order expediting Avenal's PSD permit application would not directly bottleneck other PSD permit applications because the requisite steps have already been completed and process is complete—a draft permit has been submitted to the public for comment, comments have been received, public hearings held, EPA's findings have been released, and applicant comments addressed.  *See* Section IV.B, *supra*.

---

[32] Cal. Energy Comm'n, Final Comm'n Decision–Avenal Energy (08-AFC-01), Comm'n Adoption Order 1, CEC-800-2009-006-CMF (Dec. 2009), *available at* http://www.energy.ca.gov/2009publications/CEC-800-2009-006/CEC-800-2009-006-CMF.PDF.

[33] *See Region 9: Air Programs*, EPA, http://www.epa.gov/region9/air/permit/r9-permits-issued.html (last visited August 25, 2010).

The sixth *TRAC* factor notes that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (internal quotes omitted).  Where impropriety lurks behind agency lassitude, "the agency will have a hard time claiming legitimacy for its priorities." *In re Barr*, 930 F.2d at 76.  Although Plaintiff does not accuse EPA of any hidden impropriety in this case, it does note the Agency's stated interest in imposing new requirements on pending permit applications—something that is contrary to the statutory scheme created by Congress and is not countenanced by the Supreme Court.

## V.   <u>REQUEST AND RATIONALE FOR SEEKING EXPEDITED DECISION</u>

EPA's attempt to impose new standards retroactively has left Avenal in an untenable position.  Because of new permitting requirements that EPA has issued in the last few months, and others that the Agency has proposed or announced but not yet issued, Avenal is now facing the prospect of a never-ending permitting process.  *See, e.g.*, 75 Fed. Reg. 2938 (Jan. 19, 2010) (proposed new standard for ozone); 75 Fed. Reg. 6474 (final rule establishing new standard for NO2); 75 Fed. Reg. 6827 (Feb. 11, 2010) (proposal to apply new PM modeling requirements to pending permit applications); 75 Fed. Reg. 17004 (April 2, 2010) (final rule imposing new permitting requirements for greenhouse gases, including for permit applications pending as of January 2, 2011); 75 Fed. Reg. 35520 (Jun. 2, 2010) (final rule establishing new standard for SO2).

The prospect of a perpetual permitting process is not just a theoretical concern.  EPA has already finalized new permitting requirements for greenhouse gases ("GHGs") that, by their own terms, will apply to Avenal unless EPA chooses (or is ordered by this Court) to issue the Avenal permit within the next four months.  "We are not promulgating an exemption for PSD permit applications that are pending. . . . Any PSD permits issued on or after January 2, 2011 will need to address GHGs."  75 Fed. Reg. 17004, 17021; 75 Fed. Reg. 31514, 31527 (Jun. 3, 2010).  Under

EPA's new GHGs rules, regardless of when a permit application was submitted, if the Agency refuses to grant the permit by the end of this year, then the permit applicant must go back and develop a new permit application that includes an extensive analysis of GHGs (without any guidance, at least to date, on how such an analysis should be performed or evaluated). *Id.* That analysis, and presumably anything else that EPA decides to require in the new application, must then go through another notice-and-comment process before EPA will even consider issuing a final permit.  As the record in this case shows, this process (multiple rounds of public comment followed by the many months that EPA takes to review such comments) can go on for years.  Then, if at any time during this process EPA decides to impose any new permitting standard or requirement, the permit applicant is sent back to starting line—all without any regard to the statutory deadline that Congress imposed on EPA for issuing permits.

Plaintiff understands that this Court has a very full docket and extensive obligations over the next six months, but Avenal respectfully requests that the Court decide this dispositive motion on an expedited basis and order EPA to grant the Avenal permit before the end of this year.  Although the background in this case may appear somewhat complex, the legal issues presented to this Court are very straightforward.  According to EPA, the only remaining reason for continuing to withhold its decision on the permit is that EPA wants to impose new requirements relating to NO2 that did not exist at the time the permit application was submitted and found to be complete, or even as of the date by which EPA was statutorily required to issue the permit.  (*See* Answer, Defenses ¶ 2)  If this Court does not address this issue and order EPA to grant the permit by year end, then Avenal will be faced with a whole new set of legal and procedural issues and additional years of delay.

VI.     **<u>CONCLUSION</u>**

As discussed above, Avenal has met all the statutory requirements for obtaining the Clean Air Act permit that it has been seeking for almost three years.  EPA, on the other hand, has failed to fulfill its statutory obligations and ignored the language, purpose and intent of the Act.  Further, EPA has unreasonably and unlawfully delayed issuance of the final PSD permit and offers no valid defense for its failures.

This Court has the authority to impose a deadline compelling final agency action.  Avenal respectfully requests that the Court issue an order preventing the Agency from retroactively imposing new emission standards in this case and requiring the Administrator to issue a decision, conclusive of all internal EPA proceedings and constituting final agency action, that grants Avenal's pending PSD permit by December 31, 2010.

For the reasons set forth above, Avenal is entitled to judgment as a matter of law and an award of attorney's fees and costs and an Order requiring that Defendants perform their mandatory duty on the requested schedule.

Date:  <u>August 25, 2010</u>                                          Respectfully submitted,

<div style="margin-left: 50%;">

_____<u>/s/ LaShon K. Kell</u>_____

LaShon K. Kell, Esq.  (DC Bar #483465)
BRACEWELL & GIULIANI LLP
2000 K Street, N.W., Suite 500
Washington, DC  20006
Telephone:  (202) 828-5816
Facsimile:   (202) 857-4835
E-mail:  <u>lashon.kell@bgllp.com</u>


_____<u>/s/ Jeffrey R. Holmstead</u>_____

Jeffrey R. Holmstead (DC Bar #457974)
BRACEWELL & GIULIANI LLP
2000 K Street, N.W., Suite 500
Washington, DC 20006-1872
Telephone: (202) 828-5852
Facsimile:  (202) 857-4812
E-mail:  <u>jeff.holmstead@bgllp.com</u>

***Counsel for Plaintiff,***
***Avenal Power Center, LLC***

</div>

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AVENAL POWER CENTER, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 10-cv-00383 (RJL)** |
| | **(Hon. Richard J. Leon)** |
| **U.S. ENVIRONMENTAL PROTECTION AGENCY,** *et al.*, | |
| **Defendants.** | |

## STATEMENT OF MATERIAL FACTS

Plaintiff Avenal Power Center, LLC ("Avenal" or the "Company"), by and through its attorneys, submits Statement of Material Facts Not in Dispute:

1.      Avenal is the developer of the Avenal Energy Project ("AEP" or the "Project"), a 600 megawatt natural gas-fired power plant.  (Compl. ¶¶ 2, 10.)

2.      Avenal has proposed that the Project, a major stationary source, be constructed in an area that has been designated attainment for certain National Ambient Air Quality Standards. (Compl. ¶ 18; Answer ¶ 18.)

3.      Avenal first contacted the EPA in August 2007 in regards to the application process for securing a Prevention of Significant Deterioration ("PSD") permit for the Project.  (Compl. ¶¶ 2, 19; Answer ¶¶ 2, 19.)

4.      Avenal submitted its initial PSD permit application for the Project to the EPA in February 2008.  (Compl. ¶¶ 5, 20; Answer ¶¶ 5, 20.)

5.      On March 19, 2008, the EPA notified Avenal, by letter, that its PSD permit application was complete.  (Compl. ¶¶ 5, 21; Answer ¶¶ 5, 21.)  A true and correct copy is attached as <u>Exhibit A</u>.  (*Id.*)

6.      The EPA failed to issue a final decision on Avenal's PSD application by March 19, 2009.  (Compl. ¶ 22; Answer ¶ 22.)

7.      Following EPA's failure to timely grant or deny Avenal's PSD permit application, EPA published a draft permit and its Statement of Basis and Ambient Air Quality Impact Report on June 16, 2009, in which EPA stated that Avenal met all Clean Air Act standards. *See* EPA's Avenal Docket, EPA Region 9's Statement of Basis and Ambient Air Quality Impact Report, Doc. # EPA-R09-OAR-2009-0438-0004, p. 9 (June 2009); *available at* http://www.regulations.gov/search/Regs/home.html#docketDetail?R=EPA-R09-OAR-2009-0438 (last visited August 25, 2010).

8.      It was not until this point that EPA began the public comment period for the Project, which it also unilaterally extended for an additional three months—from a July 16, 2009 close to an October 15, 2009 close.  S*ee* EPA's Avenal Docket, Public Notice, Doc. # EPA-R09-OAR-2009-0438-0002 (June 16, 2009); Public Notice, Doc. # EPA-R09-OAR-2009-0438-0005 (August 28, 2009); Public Notice, Doc. # EPA-R09-OAR-2009-0438-0016 (September 11, 2009).

9.      Then, between September and October 2009, EPA went on to schedule a public information meeting, a public hearing, and a supplemental public hearing regarding the Project. (*Id.*)

10.     To date, EPA still has not taken final action on Avenal's PSD permit application. (Compl. ¶ 22; Answer ¶ 22.)

11.     Therefore, on December 21, 2009, Avenal provided the EPA with notice of its intent to file the present action.  (Compl. ¶ 25; Answer ¶ 25.)  A true and correct copy of that letter was attached to the Complaint and also hereto as Exhibit B.  (*Id.*)

Date:  <u>August 25, 2010</u>                                        Respectfully submitted,

                                                        <u>     */s/ LaShon K. Kell*                    </u>
                                                        LaShon K. Kell, Esq.  (DC Bar #483465)
                                                        BRACEWELL & GIULIANI LLP
                                                        2000 K Street, N.W., Suite 500
                                                        Washington, DC  20006
                                                        Telephone:  (202) 828-5816
                                                        Facsimile:   (202) 857-4835
                                                        E-mail:  <u>lashon.kell@bgllp.com</u>


                                                        <u>     */s/ Jeffrey R. Holmstead*              </u>
                                                        Jeffrey R. Holmstead (DC Bar #457974)
                                                        BRACEWELL & GIULIANI LLP
                                                        2000 K Street, N.W., Suite 500
                                                        Washington, DC 20006-1872
                                                        Telephone: (202) 828-5852
                                                        Facsimile:  (202) 857-4812
                                                        E-mail:  <u>jeff.holmstead@bgllp.com</u>

                                                        ***Counsel for Plaintiff,***
                                                        ***Avenal Power Center, LLC***

DC\#267524                                          -3-