IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AVENAL POWER CENTER, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:10-cv-00383-RJL |
| | ) |
| UNITED STATES ENVIRONMENTAL | ) |
| PROTECTION AGENCY and | ) |
| LISA P. JACKSON, Administrator, | ) |
| United States Environmental Protection Agency, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF DEBORAH JORDAN

I, Deborah Jordan, under penalty of perjury, affirm and declare that the following statements are true and correct to the best of my knowledge and belief, and are based on my own personal knowledge or on information contained in the records of the United States Environmental Protection Agency ("EPA") or supplied to me by EPA employees under my supervision at EPA.

1. I am Director of the Air Division, Region 9, EPA. EPA's Region 9 Office generally has the responsibility within EPA for overseeing the implementation of the Clean Air Act ("CAA" or "the Act") in the Region 9 area. In Region 9, EPA has delegated the authority to implement procedures for preconstruction review for prevention of significant deterioration ("PSD") for new or modified major (stationary) sources under the CAA regulations in 40 C.F.R. § 52.21 to the Director of the Air Division.

2. I have been Director of the Air Division of Region 9 since March 7, 2004. Previously, I served as Associate Regional Administrator, in the role of chief of staff for former EPA Region 9 Regional Administrator Wayne Nastri. I have also served as Chief of the Federal Facilities and

Site Cleanup Branch in the Superfund Division of EPA Region 9, and as Associate Director of the Air Division for the Region.

3. As Director of the Air Division in Region 9, I oversee and have worked extensively with Region 9 staff and management in the Region 9 Air Permits Office, which is responsible for processing PSD permit applications, and the Air Quality Analysis Office, which is responsible for reviewing air modeling analyses submitted to Region 9 in conjunction with PSD permitting actions. Thus, I am knowledgeable about EPA Region 9's actions to date concerning EPA's processing of the PSD permit application for the Avenal Energy Project ("Project"). In addition, I am knowledgeable about how to establish a schedule for PSD permitting which involves reviewing air modeling analyses and undertaking associated PSD permitting actions such as preparing the necessary documentation concerning EPA's determinations concerning such an analysis, providing for public notice and comment on such an analysis, and preparing response to comments and final decision documents pertaining to such an analysis. I am familiar with the amount of staffing necessary to complete these actions, the time frames associated with this work and the total workload of the staff working on these actions, as well as that of their supervisors, managers, and senior management staff. These duties and activities have made me knowledgeable of the requisite procedures and workloads associated with the processing of PSD permit applications.

4. This declaration is filed in support of Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Judgment on the Pleadings and In Support of Defendants' Cross-Motion for Summary Judgment in the above-captioned proceeding. It is also filed specifically to support Defendants' request for a schedule providing for the Region 9 Air Division Director to issue a final permit decision on the pending Avenal Energy Project PSD

permit application by December 31, 2010. EPA believes this schedule to be the most expeditious time frame for a final permit decision by the Region 9 Air Division Director. Any shorter time frame would seriously jeopardize the technical adequacy of the EPA's permit decision as well as the opportunities for the public to provide input on this decision, as a shorter time frame would mean that EPA would not have sufficient time to analyze the relevant technical data submitted by the applicant, prepare documentation concerning its determination on this analysis, or to follow appropriate procedures to inform the public and respond to public comment on the issues.

## I. LEGAL BACKGROUND AND EPA'S ACTIONS TO DATE

5. CAA section 165(a) provides that a major emitting facility subject to the PSD permitting program may not be constructed unless the following requirements, among others, are satisfied:

> (1) a permit has been issued for such proposed facility in accordance with this part setting forth emission limitation which conform to the requirements of this part; . . .
> (3) the owner of operator of such facility demonstrates, as required pursuant to section 7410(j) of this title, that emissions from construction or operation of such facility will not cause, or contribute to, air pollution in excess of any . . . (B) national ambient air quality standard in any air quality control region.

6. EPA regulations require that a PSD permit applicant "demonstrate that allowable emission increases from the [facility], in conjunction with all other applicable emission increases or reductions . . . , would not cause or contribute to air pollution in violation of (1) any national ambient air quality standard in any air quality control region." 40 C.F.R. § 52.21(k).

7. EPA regulations at 40 C.F.R. Part 124 set forth the procedural requirements for EPA's decision making process for the PSD program. Among other things, the regulations generally provide for public notice and comment and an opportunity for public hearing on the basis for EPA's decision prior to EPA's making a final permit decision. 40 C.F.R. §§ 124.1(c), 124.10-12. The regulations generally provide for a 30-day public comment period, and also provide that

3

notice is to be given at least 33 days prior to EPA's holding a public hearing or before a comment period closes when notice is given by mail. 40 C.F.R. §§ 124.10-12, 124.20(d). In addition, EPA must respond to all significant comments raised during the public comment period or during any hearing. 40 C.F.R. § 124.17(a). The EPA Regional Administrator or his or her delegate (in the case of Region 9, the Regional Air Division Director) then issues the final permit decision. 40 C.F.R. §§ 124.15, 124.17-18.

8. After EPA issued its letter notifying Avenal that its PSD permit application was complete, EPA processed the application by conducting its own internal analysis of the information provided, communicating regularly with Avenal concerning additional information EPA believed necessary in order to move forward with the issuance of a proposed permit decision, and considering additional information received from Avenal.

9. EPA conducted an extended public comment process for the proposed PSD permit for the Project, including a public information meeting and two public hearings in response to requests from stakeholders. Shortly after EPA Region 9's issuance of the initial public notice on June 16, 2009 concerning the proposed PSD permit for the Project, members of the public requested that EPA extend the public comment period, hold a public meeting and hearing on the Project, and also provide public notice in Spanish. In addition, members of the public expressed concern about conflicting public proceedings in the area, and EPA determined that holding a supplemental public hearing would be appropriate. The public information meeting and the two public hearings were held as scheduled, after which time the comment period for the proposed permit closed.

10. After the close of the public comment period, EPA commenced work on considering and drafting responses to the dozens of comments received, some of which raised many different

issues. EPA also discussed some of these issues with Avenal, and reviewed additional information relevant to the comments submitted by Avenal following the close of the comment period. Attached hereto as Exhibit 1 is a true and correct copy of a letter dated November 16, 2009 from Jeffrey R. Holmstead of Bracewell & Giuliani, LLP to EPA Region 9.

11. EPA conducted a formal Endangered Species Act ("ESA") section 7 consultation in conjunction with the permit decision making process for the Project. After receiving a biological assessment from Avenal, EPA Region 9 requested initiation of formal consultation on the Project with the U.S. Fish and Wildlife Service ("FWS"), and preparation of a biological opinion, to address potential impacts to the San Joaquin Kit Fox, on July 10, 2008. EPA also requested the FWS's written concurrence that the Project was not likely to adversely affect certain other federally listed endangered plant and wildlife species. Attached hereto as Exhibit 2 is a true and correct copy of the July 10, 2008 letter. After providing its final comments to the FWS on the FWS's draft Biological Opinion for the Project in December 2009, EPA continued to regularly contact FWS to inquire about the status of the final Biological Opinion. EPA's formal section 7 consultation with FWS concluded with EPA receiving a final Biological Opinion from FWS on August 9, 2010. Avenal submitted a letter to EPA Region 9 dated August 16, 2010 indicating its intent to commit to the terms of the Biological Opinion and requesting that the terms of its PSD permit be changed to include the Biological Opinion's requirements. A true and correct copy of this August 16, 2010 letter (without the attached Biological Opinion) is attached hereto as Exhibit 3. On September 1, 2010, EPA sent a letter to Plaintiff requesting that Plaintiff provide a letter addendum to its permit application to include a commitment to comply with the reasonable and prudent measures and terms and conditions included in the Biological Opinion, in lieu of EPA's changing the permit's requirements, consistent with the terms of the Biological

Opinion and EPA practice. A true and correct copy of this September 1, 2010 letter is attached hereto as Exhibit 4.

## II. EPA'S OUTSTANDING OBLIGATIONS

12. EPA must conclude that its ESA section 7 obligations are satisfied for purposes of making a final decision on Avenal's permit application. EPA has not yet received the requested ESA-related permit application addendum letter from Avenal, but anticipates that it will receive the letter shortly. If Avenal promptly submits an adequate commitment letter, EPA will be able to conclude that its ESA section 7 obligations are satisfied for purposes of making a final decision on Avenal's permit application, consistent with ESA regulations at 50 C.F.R. § 402.15(a).

13. EPA promulgated a new 1-hour national ambient air quality standard ("NAAQS") for nitrogen dioxide ("NO2"), effective April 12, 2010. 75 Fed. Reg. 6474 (Feb. 9, 2010).

14. EPA interprets applicable statutes and regulations as precluding the Agency from issuing a PSD permit without a demonstration that the source will not cause or contribute to a violation of the hourly NO2 standard. See Memorandum from Stephen D. Page, EPA Office of Air Quality Planning and Standards, Applicability of the Federal Prevention of Significant Deterioration Permit Requirements to New and Revised National Ambient Air Quality Standards (Apr. 1, 2010), a true and correct copy of which is attached here to as Exhibit 5.

15. EPA is currently evaluating, pursuant to section 165(a)(3) of the CAA, whether Plaintiff has demonstrated that emissions from the Project will not cause or contribute to air pollution in excess of the hourly NO2 NAAQS.

16. The public participation process that EPA has provided to date for the proposed Avenal PSD permit did not address the hourly NO2 NAAQS. In addition, the public

participation process did not address the hourly sulfur dioxide ("SO2") NAAQS, which became effective on August 23, 2010. EPA has informed Avenal that it believes that the Project's emissions would comply with the hourly SO2 NAAQS, and that it has determined that additional analysis is not required from Avenal to address this standard, given that the Project's SO2 emissions are estimated to be 16.7 tons per year, which is below the significant emissions rate for SO2, per 40 C.F.R. §§ 52.21(m)(1) and 52.21(b)(23)(i).

17. EPA has been working with Avenal through a number of letter exchanges and discussions to determine whether the proposed facility will comply with the hourly NO2 standard. On August 17, 2010, Avenal confirmed its intent to provide EPA with the additional information and justification EPA requested concerning its hourly NO2 NAAQS analysis by September 13, 2010 as requested by EPA. A true and correct copy of Avenal's August 17, 2010 letter is attached hereto as Exhibit 6. EPA received an additional hourly NO2 NAAQS submittal from Avenal on September 13, 2010, and is currently reviewing it. A true and correct copy of the cover letter and memorandum from that September 13, 2010 submittal (excluding the submittal's attachments) is attached hereto as Exhibit 7.

18. Consistent with EPA regulations in 40 C.F.R. Part 124, EPA has determined that an additional 33-day public comment period, which will conclude with a public hearing, concerning EPA's determination regarding whether emissions from the Project will cause or contribute to a violation of the hourly NO2 NAAQS and the hourly SO2 NAAQS is appropriate and necessary prior to Region 9's making a final decision on the PSD permit application for the Project. EPA has determined that it must also respond to all significant comments raised during the public comment period or during any hearing, thus EPA must consider and respond to all such comments prior to making its final permit decision for the Project.

### III. EPA'S PROPOSED SCHEDULE FOR REGION 9 TO ISSUE A FINAL PERMIT DECISION

19. I believe that it will take Region 9 approximately 3½ months from September 13, 2010 – the date that Avenal submitted its most recent supplemental hourly NO2 NAAQS analysis – to undertake the various technical and procedural tasks needed to complete the permit decision making process for the Avenal PSD permit application, as described in more detail below.

20. EPA will review and evaluate the information and analysis submitted by Avenal on September 13, 2010, and consider whether any modifications to the permit's emissions limitations or other aspects of its permit decision documentation would be necessary in conjunction with its review of that information and analysis. EPA will then prepare a written determination concerning Avenal's air quality impacts analysis for the hourly NO2 NAAQS and any other necessary modifications to the permit's emissions limitations or other aspects of its permit decision documentation, which EPA would make available for public review and comment. EPA will concurrently prepare a public notice that will notify and seek comment from the public about EPA's determination concerning whether Avenal has demonstrated compliance with the hourly NO2 NAAQS and the hourly SO2 NAAQS and other relevant information concerning the proposed permit decision that arises in the context of EPA's review of the hourly NO2 NAAQS analysis. This notice will also propose a public hearing, which would need to be held at least thirty-three days after the date of the public notice. Having received the additional NO2 information from Avenal, EPA will also move forward with making arrangements for the public hearing, including, among other things, setting a date and location for the hearing, and arranging for a hearing officer, a court reporter, and a translator for

8

the public hearing. EPA believes that it will need approximately six weeks to accomplish all of these tasks described in this paragraph ¶ 20.

21. Consistent with the EPA regulatory time frames described above, the public comment/hearing period would last approximately thirty-three days from the date of the public notice announcing both the comment period and the hearing. After the close of the public comment period, EPA will use the next approximately four weeks to consider and prepare a response to comments received during the comment period and public hearing, make any necessary changes to the permit and associated documents, prepare final decision documents, and have the Regional Air Division Director issue a final permit decision per 40 C.F.R. § 124.15 no later than December 31, 2010.

22. If Avenal requests that EPA consider significant additional new information or analysis submitted much later than September 13, 2010, EPA may need additional time complete its permit decision making process for the Project, in light of the tasks above to be completed as part of that process.

SO DECLARED:

_____
DEBORAH JORDAN

Dated: 9-17-10