IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AVENAL POWER CENTER, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:10-cv-00383-RJL |
| | ) | (Hon. Richard J. Leon) |
| U.S. ENVIRONMENTAL PROTECTION | ) | |
| AGENCY and LISA P. JACKSON, in her | ) | |
| capacity as Administrator of the | ) | |
| U.S. Environmental Protection Agency | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING REMEDY**

The appropriate remedy in this case is the one proposed by EPA in its Cross-Motion for Summary Judgment, as modified by the McCarthy Declarations: an order requiring the Administrator's delegate to grant or deny Plaintiff's permit application by May 27, 2011, in accordance with the procedures set forth in 40 C.F.R. Part 124. Such an order is sufficient to discharge EPA's nondiscretionary duty under Section 165(c) of the Clean Air Act ("CAA") to "grant or deny" the permit application at issue in this matter and is otherwise consistent with the CAA and EPA's regulations.

In its motion for judgment on the pleadings, Plaintiff asks the Court to, among other things, order EPA to "[g]rant the PSD permit application for the Project" and order EPA to "[t]ake other appropriate actions to remedy, mitigate, and offset the harm to Plaintiff caused by [EPA's] disregard of their statutory duty . . . ." Plaintiff's Proposed Order, Docket Entry 12-1. In its most recent brief, however, Plaintiff appears to concede that requiring EPA to grant Plaintiff's permit and ordering other declaratory relief are not appropriate remedies in a deadline

1

suit like this one.  Instead, Plaintiff asks the Court to order the EPA Administrator to take final agency action on the permit application by May 27, 2011, thereby cutting off the public's opportunity to petition the Environmental Appeals Board ("EAB") for review of the permit decision, as provided in EPA's regulations.  Plaintiff's Brief Regarding Remedy at 3.  Yet such a remedy is not an appropriate remedy either, because the Court has no jurisdiction to order it.  First, Plaintiff's requested relief amounts to a challenge to EPA's regulations, which provide a specific permit review process culminating in a permit grant or denial by the Administrator's delegate, not a final agency action by the Administrator herself.  Such a challenge is time-barred under the CAA.  Second, Plaintiff's requested relief would require the Court to direct the manner in which the Administrator uses her discretion, which is prohibited under the body of case law governing deadline suit remedies.  In any event, EPA's interpretation of its Section 165(c) duty is reasonable and should be afforded deference by the Court.

## STATUTORY AND REGULATORY BACKGROUND[1]

Part C of Subchapter I of the Clean Air Act provides the Act's Prevention of Significant Deterioration of Air Quality ("PSD") Program.  *See generally* 42 U.S.C. §§ 7470-7479.  Congress's purpose in enacting the PSD Program was, *inter alia*, "to assure that any decision to permit increased air pollution . . . is made only after careful evaluation of all the consequences of such a decision and after adequate procedural opportunities for informed public participation in the decisionmaking process."  *Id.* § 7470(5).  CAA Section 165 provides statutory requirements for issuing such permits, including that "[any proposed permit be] subject to a review in

---

[1] Defendants direct the Court's attention to Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Judgment on the Pleadings and In Support of Defendants' Cross-Motion for Summary Judgment ("Defendants' Memorandum in Support") and supporting materials (Jordan Declarations and McCarthy Declarations), as well as the parties' Joint Stipulation of Facts, for a summary of the facts of this case.  *See* Docket Entries 11, 14, 24, 30.

2

accordance with this section, the required analysis [be] conducted *in accordance with regulations promulgated by the Administrator*, and a public hearing [be] held with opportunity for interested persons . . . to appear and submit written or oral presentations on the air quality impact of such source . . . ." *Id.* § 7475(a)(2) (emphasis added). Section 165(c) provides that a completed PSD permit application must be "granted or denied not later than one year after the date of filing of such completed application." *Id.* § 7475(c).

CAA Section 301(a)(1) authorizes the Administrator to "prescribe such regulations as are necessary to carry out his [or her] functions [and] delegate to any officer or employee of the Environmental Protection Agency such of his [or her] powers and duties under this chapter, except the making of regulations . . . , as he [or she] may deem necessary or expedient." *Id.* § 7601(a)(1). Pursuant to such authority, and the authority to promulgate regulations governing the PSD permit review process explicitly mentioned in CAA Section 165, *id.* § 7475(a)(2), EPA promulgated 40 C.F.R. Part 124 to provide a very specific process for the review and analysis of PSD permit applications. *See* 40 C.F.R. Part 124. PSD permit applications are reviewed under one of three methods—by EPA, by states with delegated authority to apply federal law, or by states approved to issue permits under state law incorporated into an EPA-approved State Implementation Plan. 40 C.F.R. §§ 52.21(a), 52.21(u), 51.166(a)(7). The first method, which is the one at issue here, is governed by the procedures set forth in 40 C.F.R. Part 124. The Administrator is bound to follow the Part 124 procedures. 40 C.F.R. § 52.21(q). Indeed, in a paragraph entitled "Public participation," EPA's PSD regulations explicitly state that "[t]he Administrator *shall follow* the applicable procedures of 40 C.F.R. Part 124 in processing applications under this section." *Id.* (emphasis added).

In Part 124, the Administrator delegated authority to review PSD permit applications to

the Director, who is defined in Part 124 as the Regional Administrator, *see id.* §§ 124.2, 124.41. After receiving a PSD permit application, the Regional Administrator must first determine whether the applicant has complied with the applicable requirements so that the application can be deemed complete. *Id.* § 124.3. Next, the Regional Administrator tentatively decides whether to prepare a draft permit or issue a notice of intent to deny the permit application. *Id.* § 124.6. If the Regional Administrator decides to prepare a draft permit, he or she must also prepare a statement of basis or fact sheet. *Id.* §§ 124.7, 124.8. The Regional Administrator must also provide the public with notice of the tentative decision and an opportunity to provide comments on it, as well as a public hearing if requested. *Id.* § 124.10-12. Finally, the Regional Administrator issues a final permit decision. *Id.* § 124.15. [2]

Section 124.19 provides anyone who commented on the proposed permit during the comment period, including the permit applicant, the right to petition the Environmental Appeals Board ("EAB") for review of the Regional Administrator's final permit decision within thirty days of the decision. *Id.* § 124.19. The permit decision becomes final agency action for purposes of appeal to a federal court of appeals only after the administrative appeal process is exhausted. *See id.* §§ 124.6(e), 124.19(e)-(f). A petition for review by the EAB under Section 124.19 is a prerequisite to seeking judicial review of the final agency action. *Id.* § 124.19(e).

The right to file an administrative petition for review of final permit decisions was first established in 1980 when EPA promulgated Part 124, including Section 124.19. *See* 45 Fed.

---

[2] Although Part 124 refers to the Regional Administrator, the Administrator has temporarily changed her delegation of authority to issue a final permit decision here. *See* March 1, 2011, Temporary Delegation, Exhibit A. Because of the national implications of the Agency's changed position on the applicability of the revised NO2 NAAQS, the Assistant Administrator for the Office of Air and Radiation, Regina McCarthy, will stand in the shoes of the Regional Administrator to issue the permit decision in accordance with the procedures set forth in Part 124. *Id*; *see also infra* n.5.

Reg. 33,405, 33,412 (May 19, 1980). This rule, which was properly adopted through a notice-and-comment procedure, is a legislative rule that cannot be changed without completing a notice-and-comment rulemaking because the rule establishes the right of private parties to request such review. *See Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045 (D.C. Cir. 1987) ("Substantive rules are ones which grant rights, impose obligations, or produce other significant effects on private interests . . .") (quotations and citation omitted); *Batterton v. Marshall*, 648 F.2d 694, 701-02 (D.C. Cir. 1980). From 1980 to 1992, Section 124.19 provided that the Administrator would hear petitions for review of PSD permit decisions. 45 Fed. Reg. at 33,412; *see also* 57 Fed. Reg. 5320 (Feb. 13, 1992) (describing the administrative appeal process between 1980 and 1992). In 1992, EPA created the Environmental Appeals Board, and the Administrator then delegated to the Board authority to hear petitions for review brought pursuant to Section 124.19. *See* 57 Fed. Reg. 5320-1.[3]

Since 1992, the Environmental Appeals Board has issued sixty-one published opinions on petitions for review of PSD permits. *See* Published Decisions: PSD Permit Appeals (CAA), http://yosemite.epa.gov/oa/EAB_Web_Docket.nsf/PSD%20Permit%20Appeals%20(CAA)!Open View&Start=1 (last visited Mar. 1, 2011). Only four of the EAB's decisions on review of PSD permits have been appealed to the United States Courts of Appeals. *See Sierra Club v. EPA*, 499 F.3d 653 (7th Cir. 2007); *Santa Teresa Citizen Action Group v. Envtl. Appeals Bd.*, No. 01-71611, 51 Fed. Appx. 702 (9th Cir. 2002); *Sur Contra La Contaminacion v. EPA*, 202 F.3d 443

---

[3] EPA adopted this rule without following the APA's notice-and-comment procedures under the APA's exemption for "rules [of] agency organization, practice or procedure." 57 Fed. Reg. at 5322. The applicability of this exemption is preserved under the CAA. 42 U.S.C. § 7607(d)(1). The 1992 rulemaking did not alter the rights of parties to petition for review, but required parties to present their petitions to the EAB rather than the Administrator. *See Batterton*, 648 F.2d at 707 ("a useful articulation of the exemption's critical feature is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency.")

(1st Cir. 2000); *Chabot-Las Posita Cmty. Coll. Dist. v. EPA*, Petition for Review filed Jan. 13, 2011, No. 10-73870 (9th Circuit).  To date, no court has granted a petition for review of an EAB PSD decision.

When the EAB was created, the Administrator delegated exclusive authority to hear petitions for review of permit decisions and explicitly denied herself the authority to consider appeals filed directly with the Administrator or to review decisions by the EAB.  *See* 40 C.F.R. §§ 124.2 (The definition of the EAB provides that "[a]n appeal directed to the Administrator, rather than to the Environmental Appeals Board, will not be considered."); 40 C.F.R. § 124.19(g) ("Motions for reconsideration directed to the administrator, rather than to the Environmental Appeals Board, will not be considered . . . ."); s*ee also* 57 Fed. Reg. 5321 ("[T]he delegation of authority does not preclude the Board from referring a particular case or motion to the Administrator for decision when the Board deems it appropriate to do so.  The language of the provisions makes clear, however, that an appeal or motion for reconsideration of a Board decision must be directed to the Board.  An appeal or motion for reconsideration directed to the Administrator will not be considered.  One of the goals of the Board is to relieve the Administrator of the responsibility for responding to appeals.").  Since delegating authority to hear appeals to the EAB, the Administrator has repeatedly declined to review the conditions of PSD permits in the context of petitions to object to CAA operating permits that incorporate conditions from PSD permits, explaining that authority to hear PSD permit appeals rests exclusively with the EAB under 40 C.F.R. § 124.19.  *See In re Louisville Gas & Electric Co.*, Petition No. IV-2008-3 (Order on Petition) at 4 n.5 (Aug. 12, 2009), *available at* http://www.epa.gov/region07/air/title5/petitiondb/petitions/lg_e_2nddecision2006.pdf (last visited Mar. 1, 2011) (citing *In re Kawaihae Cogeneration Project*, Petition No. 0001-01-3

(Order Responding to Petitioner's Request that the Administrator Object to Issuance of a State Operating Permit) (Mar. 10, 1997), *available at* http://nlquery.epa.gov/epasearch/epasearch (search Kawaihae Cogeneration Project) (last visited Mar.1, 2011).  Indeed, the only role Part 124 provides for the Administrator for review of PSD permitting decisions is the review of cases or motions referred to the Administrator by the EAB when the EAB deems it appropriate to do so.  *See* 40 C.F.R. § 124.2 (definition of EAB).  The EAB has not done so here.

## ARGUMENT

### I. THE COURT HAS NO JURISDICTION TO ORDER PLAINTIFF'S REQUESTED RELIEF.

#### A. PLAINTIFF'S CHALLENGE TO EPA'S REGULATIONS IS UNTIMELY.

As an initial matter, Plaintiff's challenge to the process EPA has prescribed in its regulations is untimely.  Although Plaintiff contends in a footnote that it is not challenging EPA's regulations, *see* Plaintiff's Brief Regarding Remedy at 8 n.4, Plaintiff has asked the Court to set aside the EAB review process and the right of third parties to administrative appeal as provided in Part 124 and order the Administrator to take final agency action on its permit application.  *Id.* at 3, 8-9, 11, 17.  Plaintiff argues repeatedly that nothing in the CAA mandates the procedures provided in Part 124, and that the Administrator cannot use the regulations to avoid her mandatory duty under Section 165(c) of the Act.  *Id.* at 3, 12, 17.  These arguments are plainly challenges to the validity of the regulations in the first instance.

First, contrary to Plaintiff's arguments, the Administrator must follow the Agency's regulations.  *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954) (articulating what has come to be known as the *Accardi* doctrine—"as long as the regulations remain operative, the Attorney General denies himself the right to sidestep the Board [of Immigration Appeals] or dictate its decision in any manner"); *AFL-CIO v. Fed. Labor Relations*

7

*Auth.*, 777 F.2d 751, 759 (D.C. Cir. 1985) (describing as a fundamental principle of administrative law that "unless and until [an agency] amends or repeals a valid legislative rule or regulation, [the] agency is bound by such a rule or regulation"), *see also* 40 C.F.R. § 52.21(q) (explicitly requiring the Administrator to follow the Part 124 procedures).

Second, the regulations at issue here were first promulgated in 1980. *See* 45 Fed. Reg. 33,290-91.  In that rulemaking, EPA received public comments expressing concern that establishing a right to an administrative appeal of PSD permits under Section 124.19 would cause delay.  *Id.* at 33,412.  Additionally, EPA received comments expressing concern that Part 124's provisions for consolidating review of PSD permit applications with other environmental permit applications would run afoul of the obligation in CAA Section 165(c).  *Id.* at 33,407-08.  EPA explained in response that the Agency believed the appeal process was necessary to ensure consistency, and neither the appeal process nor permit consolidation would cause delay.  *Id.* at 33,407-08, 33,412.  No party, including Avenal, sought judicial review of the adoption of Section 124.19 on the basis of CAA Section 165(c) or other authority within the sixty-day time period provided by the Act to challenge newly-promulgated regulations.  *See* 42 U.S.C. § 7607(b) (stating that any petition for review of any nationally applicable regulations must be filed "within sixty days from the date notice of such promulgation . . . appears in the Federal Register").  Accordingly, Plaintiff is time-barred from challenging Section 124.19 here.  *See, e.g., Hawaiian Elec. Co., Inc. v. EPA*, 723 F.2d 1440, 1447 (9th Cir. 1984) (finding that the plaintiff was time-barred from challenging the definition of "major modification," which was also promulgated in 1980, through its petition for review of EPA's determination that plaintiff must comply with PSD requirements applying to major modifications).

"[T]emporal limitations on judicial review are jurisdictional in nature."  *Nat'l Mining*

8

*Ass'n. v. U.S. Dep't of Interior*, 70 F.3d 1345, 1350, 1350 (D.C. Cir. 1995) (holding arguments that were available at the time the rule was adopted were time-barred and noting similar limitations on jurisdiction in other environmental statutes including the CAA). Like similar provisions found in other environmental statutes that narrowly limit the time within which regulations can be challenged, the purpose of the CAA's limitation is to "bring[] finality to the administrative process and reflects 'a deliberate congressional choice to impose statutory finality on agency [action], a choice [the courts] may not second-guess.'" *See W. Neb. Res. Council v. EPA*, 793 F.2d 194, 198 (8th Cir. 1986) (quoting *Eagle-Picher Indus.*, 759 F.2d at 911, and citing *Cerro Copper Prods. Co. v. Ruckelshaus*, 766 F.2d 1060, 1069 (7th Cir. 1985) (Clean Water Act); *Eagle-Picher Indus.*, 759 F.2d at 911 (Comprehensive Environmental Response, Compensation and Liability Act); *Selco Supply Co. v. EPA*, 632 F.2d 863, 865 (10th Cir. 1980) (Federal Insecticide, Fungicide and Rodenticide Act), *cert. denied*, 450 U.S. 1030 (1981); *Lloyd A. Fry Roofing Co. v. EPA*, 554 F.2d 885, 892 (8th Cir. 1977) (Clean Air Act)).

Accordingly, the Court does not have jurisdiction to order the remedy Plaintiff requests because it is not consistent with the Agency's regulations—regulations the Administrator must follow. Instead, the Court should order EPA's proposed remedy—a grant or denial of Plaintiff's permit application by the Administrator's delegate by May 27, 2011, in accordance with 40 C.F.R. § 124.15.

### B. THE COURT'S JURISDICTION TO ORDER A REMEDY IS LIMITED IN DEADLINE SUITS.

The Court also lacks jurisdiction to order the remedy Plaintiff requests under the body of case law governing deadline suits like this one. Indeed, contrary to Plaintiff's contention, *see* Plaintiff's Brief Regarding Remedy at 3, EPA did not concede that the Court has jurisdiction to order the Administrator to take final agency action during the February 1, 2011, status

conference. Defendants have consistently argued that this Court's jurisdiction to grant equitable relief in this matter is limited. *See, e.g.,* Defendant's Memorandum in Support at 12-15; Defendant's Reply at 11-16. Under the Clean Air Act, the citizen suit provision provides a waiver of sovereign immunity for claims alleging that the agency has failed to perform a nondiscretionary duty under the Act. 42 U.S.C. § 7604(a). The Supreme Court has repeatedly held that "[w]aivers of immunity must be construed strictly in favor of the sovereign . . . and not enlarged beyond what the language requires." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983) (quoting cases). Where the United States has consented to be sued, the terms of that waiver of sovereign immunity define the extent of the Court's jurisdiction." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). In fashioning a remedy in a deadline suit, district courts do not have jurisdiction to review the substance of the agency's decisionmaking, or "direct the manner in which any discretion given the Administrator . . . should be exercised." *NYPIRG v. Whitman*, 214 F. Supp. 2d 1, 3 (D.D.C. 2002). "Notably, the CAA does not allow district courts to address the content of EPA's conduct, issue substantive determinations on its own, or grant other forms of declaratory relief." *Sierra Club v. Browner*, 130 F. Supp. 2d 78, 90 (D.D.C. 2001).

Here, Plaintiff brought suit alleging that EPA failed to perform a nondiscretionary duty under CAA Section 165(c).[4] *See* Complaint at ¶¶ 27-30. The CAA provides the Administrator the authority to delegate that duty, *see* 42 U.S.C. § 7601(a)(1), and the Administrator has

---

[4] Plaintiff also refers to the Agency's "unreasonable delay." Plaintiff's Brief Regarding Remedy at 14-15. An "unreasonably delay claim" is a separate and distinct claim from a "nondiscretionary duty claim." *See Sierra Club v. Thomas*, 828 F.2d 783, 788, 791-92 (D.C. Cir. 1987). Plaintiff did not plead an unreasonable delay claim in the Complaint. *See* Plaintiff's Complaint at ¶¶ 27-30.

exercised her discretion to do so here.[5]  *See* March 1, 2011, Temporary Delegation, Exhibit A; *see also* 40 C.F.R. § 124.15.  Likewise, EPA long ago exercised its rulemaking authority to provide third parties and applicants the right to petition for an administrative appeal of permit decisions.  40 C.F.R. § 124.19(a).  Contrary to Plaintiff's contention that the Part 124 procedures "only apply when decisions are made by a subordinate EPA official," Plaintiff's Brief Regarding Remedy at 8, the Part 124 regulations expressly require a process in which permitting decisions are made by subordinate EPA officials *with* an opportunity to petition for review of such decisions.  *See* 40 C.F.R. §§124.2, 124.15, 124.19.  Indeed, even if the EAB were to refer an appeal to the Administrator, Section 124.19 would continue to apply to the Administrator.  *See* 40 C.F.R. § 124.2 (The definition of the EAB provides that "[w]hen an appeal or motion is referred to the Administrator . . . the rules in this subpart referring to the Environmental Appeals Board shall be interpreted as referring to the Administrator.").  Accordingly, Part 124 provides for a specific permit review process.  While the Administrator retains the discretion to amend or revoke Part 124, she has not done so and the Court lacks the jurisdiction in this matter to order the Administrator to exercise her discretion to do so.  *United States v. Nixon*, 418 U.S. 683, 694-96 at (1974) ("So long as this regulation [establishing the powers of the Watergate special prosecutor] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

By requesting that the Court order the Administrator to issue a permit decision bypassing

---

[5] As noted *supra*, the Administrator has temporarily changed her delegation of authority to issue a final permit decision here.  *See* March 1, 2011, Temporary Delegation, Exhibit A.  Unlike withdrawing the right of appeal to the EAB, which is a substantive right, EPA is not required to complete a notice-and-comment rulemaking process to change the Administrator's delegation since such a change is a procedural rule that does not alter the rights or interests of parties.  *See* 5 U.S.C. § 553(b)(A) (exempting "rules of agency organization, procedure, or practice" from the Administrative Procedure Act's notice-and-comment requirement for substantive rules).  *See also Batterton*, 648 F.2d at 707.

the EAB review process, Plaintiff urges this Court to dictate the procedure by which the Agency reaches a permit decision in this case. Plaintiff's only support for its request is CAA Section 304(a), which provides the Court with jurisdiction to order the "Administrator" to act. *See* 42 U.S.C. § 7604(a). Yet nothing in Section 304 authorizes the Court to order EPA to act inconsistently with its delegations or regulations. *See id.* Indeed, even where the CAA specifies that the "Administrator" must take a certain action, authority to perform such action may be delegated. *See* 42 U.S.C. § 7601(a)(1); *see, e.g.*, Delegation 7-10, Exhibit B (delegating to the Regional Administrator the Administrator's duty to propose or take final action on any State Implementation Plan under Section 110 of the CAA, which requires, *inter alia*, that the "Administrator" determine whether a submitted state implementation plan is complete, *see* 42 U.S.C. § 7410(k)(1)(B)). Thus, since Congress explicitly authorized the Administrator to delegate any of her duties except the promulgation of regulations, the reference to the "Administrator" in Section 304(a) has no bearing with regard to which official in the Agency must fulfill any particular nondiscretionary duty.

Furthermore, Plaintiff's proposed remedy would lead to an absurd and unjust result since parties who seek judicial review of permit decisions must first petition the EAB to review the decision as a prerequisite to judicial review of the final agency action. 40 C.F.R. § 124.19(e); *see also* 42 U.S.C. § 7607(b) (limiting judicial review to "final agency actions"); 5 U.S.C. § 704 (requiring "appeal to a superior agency authority" if the agency's rules so require prior to judicial review). Indeed, under the administrative waiver doctrine, parties must first raise each of their arguments before the EAB before the arguments can be considered by a federal court. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that

courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); *see also Vidiksis v. EPA*, 612 F.3d 1150, 1158-59 (11th Cir. 2010) (finding arguments not raised before EAB were waived). Thus, as Plaintiff would have it, third parties who plan to appeal the Avenal permit decision to the EAB would not only lose their right to appeal to the EAB, but such parties *and Avenal itself* would be precluded from seeking judicial review before a federal court of appeals because they would not have exhausted their administrative remedies as required by EPA's regulations, the CAA, and the APA. The Court should not order a remedy that would lead to such an absurd and unjust result, nor should the Court order a remedy that dictates the Agency's discretion or conduct. Rather, the Court should order a remedy consistent with the Administrator's delegations and regulations—an order allowing the Administrator's delegate until May 27, 2011, to issue a final permit decision in accordance with 40 C.F.R. § 124.15.

## II.   A FINAL PERMIT DECISION UNDER 40 C.F.R. § 124.15 DISCHARGES EPA'S DUTY UNDER CAA SECTION 165(c).

Even if the Court determines that it has jurisdiction to consider Plaintiff's arguments in the context of this deadline suit, the action EPA has committed to complete by May 27, 2011, will discharge EPA's nondiscretionary duty in this matter. Section 165(c) of the Clean Air Act obligates EPA to "grant or deny" a complete permit application within one year, and does not plainly require that the permit become effective or "final agency action" for purposes of judicial review within this time period. *See* 42 U.S.C. § 7475(c). A final permit decision under 40 C.F.R. § 124.15 is a decision to "grant or deny" the permit application. The Court should defer to EPA's long-standing interpretation that its obligation under CAA Section 165(c) is satisfied by a permit "grant" or "denial" under 40 C.F.R. § 124.15.

### A. EPA HAS INTERPRETED CAA SECTION 165(c) TO REQUIRE PERMIT ISSUANCE OR DENIAL BY THE ADMINISTRATOR'S DELEGATE SINCE 1980.

EPA has construed Section 165(c) as requiring a permit issuance or denial under 40 C.F.R. § 124.15 within one year since 1980, when it promulgated 40 C.F.R. Part 124. As mentioned *supra*, EPA's Part 124 rules provide the option to consolidate the processing of PSD permits with additional permits required under other environmental laws. *See* 40 C.F.R. § 124.4. However, in recognition of CAA Section 165(c), 40 C.F.R. § 124.4(e) specifically provides the following: "Except with the written consent of the permit applicant, the Regional Administrator shall not consolidate processing a PSD permit with any other permit . . . when to do so would delay issuance of the PSD permit more than one year from the effective date of the application under 124.3(f)." *Id.* § 124.4(e); *see also*, 45 Fed. Reg. at 33,407-08 (referencing Section 165(c) of the CAA). Part 124 defines the effective date of the application as the date when EPA notifies the applicant that the application is complete. 40 C.F.R. § 124.3(f). The "issuance of a PSD permit" is accomplished when EPA takes the step described in Section 124.15 of the regulations. *Id.* § 124.15. The fact that Section 124.4(e) is focused on the "issuance of the PSD permit" within one year and Section 124.15 uses the term "issue" to describe a final decision to grant a permit application, illustrates that, in promulgating Part 124, EPA interpreted Section 165(c) to require that the Administrator's delegate make a final permit decision under Section 124.15 within the statutory time period. The Court should defer to EPA's interpretation because it is supported by the statute and its legislative history.

### B. EPA'S INTERPRETATION IS ENTITLED TO DEFERENCE BECAUSE IT IS SUPPORTED BY THE STATUTE AND ITS LEGISLATIVE HISTORY.

EPA's interpretation of CAA Section 165(c) as requiring a final permit decision by the

Administrator's delegate, rather than a final agency action after administrative appeal, within one year should be given controlling weight under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). "[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ." *Id.* at 844. Under the familiar *Chevron* two-step approach, when evaluating an agency's interpretation of the statute it administers, the court must first ask "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If it has, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If not, then the court must proceed to the second step. Under the second step, the court must determine if Congress has explicitly or implicitly delegated authority to the agency to "elucidate a specific provision of the statute." *Id.* at 843-44. Where there is an explicit delegation of authority, the agency's interpretations are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* Where there is an implicit delegation, the court must uphold the agency's interpretation if it is reasonable. *Id.* at 844.

Here, the precise question is whether Congress intended the grant or denial of the permit application described in CAA Section 165(c) to mean "final agency action" for purposes of appeal to a federal court. Neither the plain language of the statute nor its legislative history provides an answer to this question; thus, the statute is ambiguous. Furthermore, because Congress provided EPA with authority to promulgate regulations governing the permitting process, *see* 42 U.S.C. §§ 7475(a)(2), 7601(a)(1), Congress explicitly provided EPA with the authority to elucidate what Congress meant by "[a] completed permit application . . . shall be granted or denied not later than one year after the date of filing of such completed application."

*Id.* § 7475(c). Accordingly, this Court must give EPA's interpretation of CAA Section 165(c) controlling weight unless arbitrary, capricious, or manifestly contrary to the statute. As explained below, EPA's interpretation is consistent with the CAA and its legislative history.

First, the plain language of Section 165(c) simply requires that a completed PSD permit application be "granted or denied not later than one year after the date of filing of such completed application." *Id.* Section 165(c) does not identify any particular official that must take such action or otherwise suggest that the action must be a final agency action. *Id.* Moreover, although Plaintiff repeatedly states that Congress "clearly" intended Section 165(c) to require final agency action, *see* Plaintiff's Brief Regarding Remedy at 3, 8-11, Plaintiff provides no support for this proposition. Rather, Plaintiff solely relies on the fact that the regulations at issue and the EAB were not in existence at the time Section 165(c) was enacted. *See id.* at 8-11. But the CAA, including parts of the PSD Program, was extensively amended in 1990, long after Part 124 was promulgated and the administrative appeal process was applied by regulation to PSD permits, and Congress failed to amend Section 165(c) at that time. *Compare, e.g.*, 42 U.S.C. §§ 7474, 7475 (1977) *with* 42 U.S.C. §§ 7474, 7475 (1990). Had Congress believed that EPA had inappropriately used its rulemaking authority to define its Section 165(c) duty as one requiring issuance by the Administrator's delegate and to provide for an administrative appeal of PSD permit grants or denials, Congress would have amended Section 165(c) at that time. Thus, there is no reason to think Congress intended Section 165(c) to require completion of administrative appeals within the one year period.

Furthermore, in setting forth the framework of the PSD Program in the CAA, Congress emphasized the importance of public participation in PSD permit decisionmaking. Specifically, in describing the Program's purposes, Congress made clear that it intended the PSD Program to

assure that decisions to permit increased air pollution (through permits issued under the program) be made "only after careful evaluation of all the consequences of such a decision and after adequate procedural opportunities for informed public participation in the decisionmaking process." 42 U.S.C. § 7470(5). Likewise, in addressing the PSD permitting process specifically, Congress mandated that no permit be issued unless "a public hearing has been held with opportunity for interested persons . . . to appear and submit written or oral presentations on the air quality impact of such source . . . [or] other appropriate considerations." *Id.* § 7475(a)(2). The opportunity to petition the EAB for review of a permit decision under Section 124.19 serves an important role in satisfying the Congressional goal that EPA provide "adequate procedural opportunities for informed public participation in the decisionmaking process." While Section 124.11 provides for public comment on a draft permit and supporting statement of basis, Section 124.19 provides an opportunity for the public to review the entire administrative record, as supplemented by the Agency's response to public comments on the draft permit, and identify any clear error in the final permit decision. *See* 40 C.F.R. §§ 124.11, 124.17(b), 124.19. By ensuring both a public notice-and-comment process prior to the final permit decision by the Administrator's delegate and an opportunity to request review by the EAB after the final permit decision, the procedures in Part 124, as applied to PSD permit applications, embody Congress's intent that the public have ample opportunity to take part in PSD permit decisionmaking.

Thus, EPA's long-standing interpretation of CAA Section 165(c) as requiring a final permit decision by the Administrator's delegate, rather than final agency action, is reasonable and entitled to deference in the context of determining a remedy in this case. Accordingly, the Court should enter an order consistent with EPA's interpretation.

17

### III. EPA'S PROPOSED SCHEDULE REPRESENTS THE REASONABLE MINIMUM TIME NECESSARY TO COMPLETE THE REQUIRED ACTION.

In a suit alleging violation of a Congressionally mandated duty, the district court exercises its discretion to fashion a remedy by considering whether "the official involved . . . has in good faith employed the utmost diligence in discharging his statutory responsibilities." *NRDC v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1975).  In setting a deadline for action, the Court should not order EPA to do an impossibility.  *Id.*

Contrary to Plaintiff's contention, EPA is entitled to its proposed remedy because it has demonstrated that it has exercised utmost diligence and good faith in processing Plaintiff's permit application.  As the Jordan Declaration and Joint Stipulation make clear, EPA Region 9 worked tirelessly to review materials submitted by the applicant before and after Region 9 deemed the application complete.  *See* Joint Stipulation ¶ 6; Jordan Decl. ¶¶ 9-11.  Region 9 also regularly contacted the U.S. Fish and Wildlife Service regarding the status of the Biological Opinion, which identified measures necessary to be incorporated into the permit to ensure the protection of the San Joaquin kit fox, an endangered species under the Endangered Species Act. *Id.*

Additionally, both Region 9 and EPA Headquarters expended significant effort in an attempt to help Plaintiff identify what it needed to do to show compliance with the revised NO2 NAAQS.  *See* Joint Stipulation ¶ 6; Jordan Decl. ¶¶ 13-17; McCarthy Declaration ¶¶ 5-7.  While the Agency recently changed its position regarding Plaintiff's need to show compliance with the revised NO2 NAAQS, the Agency's change in position does not indicate that the Agency engaged in "foot-dragging" or acted in bad faith.  To the contrary, EPA promulgated the revised NO2 NAAQS in order to comply with a court-ordered deadline.  *See* Defendant's Memorandum in Support at 7 n.1.  EPA's original position requiring Avenal and others similarly situated to

demonstrate compliance with the revised NO2 NAAQS was supported by the plain language of the CAA and EPA's regulations. *See id.* at 19-20; Defendant's Reply at 12-16. In order to revise its position, EPA has determined that it must provide public notice and an opportunity for comment on its change in position and has spent significant Agency resources to support this effort. *See* Corrected McCarthy Declaration ¶¶ 6-13. In summary, while EPA understands Plaintiff's frustration with the lengthy permitting process thus far, the record demonstrates that the EPA has worked with utmost diligence and good faith to review Plaintiff's permit application in accordance with the applicable regulations. As explained by Ms. McCarthy, May 27, 2011, is the earliest the Agency can issue a decision on Plaintiff's permit application in accordance with 40 C.F.R. § 124.15. *See id.* ¶¶ 11, 13. Because Plaintiff has requested relief that exceeds the scope of remedy authorized by the citizen suit provision, and EPA's proposed remedy reflects the reasonable minimum time necessary to complete EPA's Section 165(c) duty, EPA respectfully requests that the Court grant EPA until May 27, 2011, to grant or deny Plaintiff's permit application in accordance with 40 C.F.R. § 124.15.

## CONCLUSION

For the foregoing reasons, the Court should deny the relief requested by Plaintiff and instead grant EPA's motion for summary judgment on remedy, ordering EPA to issue a final permit decision in accordance with 40 C.F.R. § 124.15 by May 27, 2011.


Dated: March 1, 2011                              Respectfully submitted,

                                                  IGNACIA S. MORENO
                                                  Assistant Attorney General
                                                  Environment and Natural Resources Division

                                                  */s/ Stephanie J. Talbert*
                                                  STEPHANIE J. TALBERT, Trial Attorney
                                                  United States Department of Justice
                                                  Environment and Natural Resources Division
                                                  Environmental Defense Section
                                                  P.O. Box 23986
                                                  Washington, D.C. 20026-3986
                                                  Telephone:   (202) 514-2617
                                                  Facsimile:   (202) 514-8865
                                                  E-mail:      stephanie.talbert@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING REMEDY with the clerk of the court for the United States District Court for the District of Columbia using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record:

LaShon K. Kell
Jeffrey R. Holmstead
BRACEWELL & GIULIANI LLP
2000 K Street, NW, Suite 500
Washington, DC 20006


                                                   */s/ Stephanie J. Talbert*
                                                  STEPHANIE J. TALBERT