UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AVENAL POWER CENTER, LLC,    )
                              )
        Plaintiff,            )
                              )
        v.                    )        Civ. Action No. 10cv383 (RJL)
                              )
U.S. ENVIRONMENTAL PROTECTION )
AGENCY, *et al.*,             )
                              )
        Defendants.           )

MEMORANDUM OPINION
(May 26 2010) [##12, 14]

Avenal Power Center, LLC ("plaintiff") brings this action against the U.S.

Environmental Protection Agency ("EPA") and Lisa P. Jackson, Administrator of the

EPA ("Administrator" and collectively "defendants") for violation of Section 165(c) of

the Clean Air Act ("CAA"). Section 165(c) requires the EPA to grant or deny specified

permit applications within one year. While the parties agree that the EPA has violated its

duty to render a final decision within one year under Section 165(c), the parties disagree

as to the appropriate remedy that the Court can, and should, impose. On March 16, 2011,

the Court heard oral argument on this question. The EPA, in essence, argues that

notwithstanding Congress' one-year statutory time limit (established in 1977) for a final

agency action, the most the Administrator could now be required to do is issue a decision

that is appealable to the Environmental Appeals Board ("EAB"): a review process

enacted by regulation in 1992 for the assistance of the Administrator, that the EPA freely

1

concedes could take anywhere from six to eighteen months, or longer, to complete.  In effect, the EPA contends that this subsequently-enacted regulatory review process *trumps* Congress' one-year statutory deadline and, as such, the most that this Court can do is require the agency to issue an appealable interim decision within the one-year statutory period.  Upon consideration of the parties' pleadings, including parties' supplemental briefs on this question, oral argument, and the record herein, the Court disagrees with the defendants' position and, therefore, GRANTS, in part, plaintiff's Motion for Judgment on the Pleadings, and DENIES defendants' Motion for Summary Judgment.  Accordingly, it is ORDERED that the EPA Administrator issue a final, non-appealable, agency action, either granting or denying plaintiff's permit application, no later than August 27, 2011.[1]

## BACKGROUND

Avenal Power Center, LLC currently seeks to develop and build a state of the art 600 megawatt natural gas-fired power plant, the Avenal Energy Project.  Jt. Stips. ¶¶ 1-3, Jt. Stmt. Re. Case Mgmt, and Sched., Ex. 1 [#11].  To this end, plaintiff submitted, in February 2008 to the EPA, a Prevention of Significant Deterioration ("PSD") permit application.  The application was deemed complete on March 19, 2008.  *Id.* ¶¶ 3-5. Almost *two years later*, however, after an elaborate and exhaustive EPA administrative process, which included a notice and comment period and public hearing, the plaintiff

---

[1] The Court reserves judgment with respect to plaintiff's request for attorney's fees and costs. In addition, in light of the February 4, 2011 declaration by Regina McCarthy, Assistant Administrator of the EPA's Office of Air and Radiation, which was released after plaintiff filed its Motion, as well as subsequent briefs and oral argument, the relief sought by plaintiff has been accordingly revised.

still had no final or foreseeable resolution to its application.  As such, the plaintiff

brought this action on March 9, 2010, seeking judicial relief to deal with EPA's

continued violation of Congress's one-year deadline under Section 165(c) of the CAA.

Compl. ¶ 28.

Initially, the EPA defended its delay by citing two unresolved issues with

plaintiff's application: (1) the EPA required continued consultation with the U.S. Fish

and Wildlife Service ("USFWS") to ensure compliance with the Endangered Species Act;

and (2) the EPA required that plaintiff show that the Project would meet a new EPA

standard for nitrogen dioxide ("NO2 Standard"). *See* Answer at 4.  On September 1,

2010, however, USFWS issued a Biological Opinion that effectively mooted the first

issue.  Pl.'s Br. Re. Remedy, Feb. 15, 2011, ("Pl.'s Supp. Br.") at 5, n. 2 [#34].

Meanwhile, the NO2 Standard had gone into effect on April 12, 2010, and plaintiff,

therefore, argued that the EPA could no longer withhold its decision on plaintiff's permit

because of this new requirement.  *See* Pl. Mot. J. on Pleadings at 11.  Ultimately, the EPA

conceded this point as well.

Indeed, on February 4, 2011, in a declaration by Regina McCarthy, Assistant

Administrator of the EPA's Office of Air and Radiation, the EPA *reversed* its position on

the NO2 Standard and announced that "[t]he PSD permit application submitted by

Avenal in 2008 is among those PSD permit applications that EPA believes it is

appropriate to grandfather from these additional [NO2 Standard] requirements,

particularly in light of EPA's statutory obligation to grant or deny a complete PSD permit

3

application within one year . . . ." Corr. 2d Decl. of Reginal McCarthy ("McCarthy

Decl.") ¶ 6. As such, the EPA announced that it would "be able to issue a final permit

decision in accordance with 40 C.F.R. § 124.15 on [plaintiff's] permit application by

May 27, 2011." *Id.* ¶ 13. Unfortunately, that offer was *not* what it appeared to be!

    As plaintiff appropriately points out, EPA's promise of a "final permit decision"

under 40 C.F.R. § 124.15 was inherently disingenuous. It actually was only a promise to

render, in effect, an "interim decision" subject to appeal before the EAB. Pl. Supp. Br. at

7. Plaintiff, as a result, was left with no choice but to seek an order from the Court

imposing a deadline, no later than May 27, 2011, by which defendants would be required

to render a decision on plaintiff's permit application that would constitute an actual *final*

agency action, allowing plaintiff to either begin construction on the Avenal Energy

Project or seek judicial review in the Federal Courts pursuant to 42 U.S.C. § 7607. *See*

*id.* at 17. Undaunted, defendants argued that an appealable decision by a Regional

Administrator is sufficient to satisfy the CAA's one-year deadline and, in any event, this

Court lacks jurisdiction to impose the relief being sought by the plaintiff. *See generally*

Defs.' Response to Pl. Supp. Br. For the following reasons, I disagree with the

defendants' oh so clever, but unsupportable, position.

## ANALYSIS

    In 1977, Congress required the Administrator of the EPA to grant or deny a permit

application, filed under the CAA, within one year. 42 U.S.C. § 7475(c). The

Administrator retained discretion, however, as to the procedural process that an applicant

4

had to comply with during that one-year period. *See* 42 U.S.C. § 7601(a). For example, the Administrator could delegate his or her ultimate decision on the application to a Regional Administrator, or an Assistant Administrator, or even require an interim decision by one of her subordinates prior to making the ultimate decision herself. *See, e.g.*, 40 C.F.R. §§ 124.15, 124.19; Mar. 1, 2011, Temporary Delegation, Defs.' Resp. to Pl.'s Supp. Br., Ex. 1. In 1992, however, the Administrator decided to create an Environmental Appeals Board and delegate to it the final review of a grant or a denial of such application by a Regional Administrator. *See* 57 Fed. Reg. 5320 (Feb. 13, 1992). Unfortunately, when the Administrator created that process she failed to build into it the temporal requirement that the EAB's decision be completed within the CAA's statutorily mandated one-year period. *See* 40 C.F.R. § 124.19. As a result, the EPA put in place a review process that can and has, in this case, rendered meaningless this Congressional one-year mandate.

Unfazed, the EPA argues, in effect, that this regulatory process trumps Congress's mandate and relieves the Administrator of complying with it until the EAB renders the Agency's final decision. *See* Defs.' Resp. to Pl. Supp. Br. at 5, 9-12; *see also* Tr. 3/19/11 at 31:17-21. Indeed, EPA contends, further, that this regulatory review process creates a right to this additional level of review that cannot be – effectively – denied by a Court order that requires the Administrator to issue a final – non-appealable – decision within the Congressionally mandated one-year period. *See* Defs.' Resp. to Pl. Supp. Br. at 5, 9-12; *see also* Tr. 3/19/11 at 36:3-6. In essence, the EPA contends that Congress's

statutory mandate is subservient to EPA's regulatory review process, and as such this

Court has *no* authority to require the Administrator to comply with this statutory

requirement. *See* Defs.' Resp. to Pl. Supp. Br. at 9-12; *see also* Tr. 3/19/11 at 36:3-6.

How absurd!

It is axiomatic that an act of Congress that is patently clear and unambiguous –

such as this requirement in the CAA[2] – cannot be overridden by a regulatory process

created for the convenience of an Administrator, no matter how much notice and

comment preceded its creation. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council,

Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of

the matter; for the court, as well as the agency, must give effect to the unambiguously

expressed intent of Congress."); *Ernst & Ernst v. Hochfelder*, 425 U. S. 185, 213-14

(1978) ("The rulemaking power granted to an administrative agency charged with the

administration of a federal statute is not the power to make law.  Rather it is the power to

adopt regulations to carry into effect the will of Congress as expressed by the statute."

(internal quotations omitted)).  Administrators of regulatory agencies derive their power

from Congress's statutory enactments – not from their own discretionary regulatory

pronouncements that are drafted for their assistance and convenience. *See North*

---

[2] The EPA has labored mightily to convince this Court that the temporal requirement enacted by Congress is somehow ambiguous and, therefore, this Court should defer to its interpretation under *Chevron*. *See* Defs.' Resp. to Pl.'s Supp. Br. at 13-17. Horsefeathers!  The EPA's self-serving misinterpretation of Congress's mandate is too clever by half and an obvious effort to protect its regulatory process at the expense of Congress's clear intention.  Put simply, that dog won't hunt.

*Carolina v. EPA*, 531 F.3d 896, 922 (D.C. Cir. 2008) (citing *Michigan v. EPA*, 268 F.3d

1075, 1081 (D.C. Cir. 2001)).  To the extent that a regulatory process frustrates or renders

meaningless a Congressional statutory mandate, it must yield to Congress's will.  *See*

*Ernst & Ernst v. Hochfelder*, 425 U. S. at 213-14; *Fed. Maritime Com. v. Seatrain Lines,*

*Inc.*, 411 U.S. 726, 745 (1973); *see also Southland Royalty Co. v. Fed. Energy Admin.*,

512 F. Supp. 436, 446 (N.D. Tex. 1980).  Thus, while the Administrator is welcome to

avail herself of whatever assistance the EAB can provide her *within the one-year*

*statutory period*, she cannot use that process as an excuse, or haven, to avoid statutory

compliance.

   Accordingly, the Administrator, in this Court's judgment, must issue a truly final

decision, either granting or denying the permit in question as soon as possible.

Regrettably her offer to issue an interim appealable decision by May 27, 2011 is patently

inadequate as it has already exceeded Congress's mandate by some three years and

undoubtedly would attenuate the process for yet another six to eighteen months.

However, recognizing that the Administrator might need a brief additional period of time

to determine how to best proceed vis-à-vis the existing EAB review process, the Court

will extend the Administrator an additional 90 days to issue her final decision, either with

or without the EAB's involvement.

## CONCLUSION

Accordingly, for the foregoing reasons, it is ORDERED that the Administrator of the EPA issue a final decision granting or denying the plaintiff's permit no later than August 27, 2011.  An order consistent with this decision accompanies this Memorandum Opinion.


RICHARD J. LEON
United States District Judge